11ALLEN M. BABINEAUX, Judge Pro Tem.
The defendant, Leslie 0. McManus, pled guilty to manslaughter after the bill of indictment was amended from second degree murder. He was sentenced on March 15, 1996, to 25 years at hard labor. Because of clear and convincing evidence that a firearm was used in the commission of the offense, the trial court ordered that five years of the sentence be without benefit of probation, parole, or suspension of sentence.
|2The defendant’s motion to reconsider sentence was denied. He now appeals his sentence on the basis of excessiveness.
We affirm.
FACTS
Leslie 0. McManus met Toni Moore through an employee at his brother’s company. Mr. McManus was 64 years old and Ms. Moore was 33 years old when they met. Initially, Mr. McManus hired the young woman to clean his house, but the relationship quickly escalated to a social and roman *650 tic level. Mr. McManus offered financial help to Ms. Moore and her children, and eventually purchased some land in Ragley, Louisiana and a mobile home for her to live in. In spite of his efforts to provide Ms. Moore with financial support and his growing affection for her, he noticed a change in her attitude towards him when she would not return his phone calls.
Deeply incensed at Ms. Moore’s rebuffs and the rumor that she was living with another man, Mr. McManus went to the property on January 6, 1994 and told her that he no longer wanted her living on his property with another man. The next day, Ms. Moore called the defendant to inform him that she was going out of town and asked him to feed the animals on the property. During the time Ms. Moore was away, Mr. McManus began to drink heavily while ruminating over the situation with Ms. Moore.
On January 9, 1994, Mr. McManus traveled out to the property to speak with Ms. Moore. While he was there, she arrived with her daughter’s boyfriend, Benji Pellegram. There was some confusion as to exactly whom Mr. Pellegram was, i.e., whether he was Ms. Moore’s new boyfriend, and a fairly heated argument developed. Ms. Moore challenged McManus that “if it makes you feel like a big man, shoot me.” |3He did. The defendant and Pellegram then struggled which resulted in a wound to Mr. McManus’ leg. McManus left the scene, returned to Lake Charles where he was located by law enforcement personnel. After a short standoff with the police, McManus attempted suicide by shooting himself in the chin.
ASSIGNMENT OF ERROR
The defendant was sentenced on March 15, 1996. The question presented in his appeal is what constitutes “excessiveness” under the law. Article 1, § 20 of the Louisiana Constitution of 1974 prohibits “cruel, excessive, or unusual punishment.” A sentence which falls within the statutory limits may nevertheless be excessive under some circumstances. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Naquin, 527 So.2d 601 (La.App. 3 Cir.1988). To constitute an excessive sentence this court must find that the penalty is so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and, therefore, is nothing more than needless imposition of pain and suffering. State v. Campbell, 404 So.2d 1205 (La.1981); State v. Everett, 530 So.2d 615 (La.App. 3 Cir.1988), writ denied, 536 So.2d 1233 (La.1989). The trial judge is given wide discretion in imposing a sentence, and a sentence imposed within the statutory limits will not be deemed excessive in the absence of manifest abuse of discretion. State v. Howard, 414 So.2d 1210, 1217 (La.1982).
La.Code Crim.P. art. 894.1 proves the requirements for sentencing. Prior to August 1995, sentencing requirements were contained in the Louisiana Sentencing Guidelines. The guidelines were repealed effective August 15, 1995, and La.Code Crim.P. art. 894.1 was amended to add new sentencing requirements. The article provides when a sentence must be imposed, factors to be considered in Udetermining whether a sentence is to be suspended or probation is to be allowed, and a requirement that the sentencing court state for the record the considerations taken into account and the factual basis for the imposition of a sentence.
With regard to this last provision, the trial court need not refer to every aggravating and mitigating circumstance in order to comply with the article. However, the record must affirmatively reflect that adequate consideration was given to the codal guidelines in particularizing the defendant’s sentence. State v. Smith, 433 So.2d 688 (La.1983).
If there is an adequate factual basis for the sentence contained in the record, the trial court’s failure to articulate every circumstance listed in Article 894.1 will not necessitate a remand for resentencing. State v. Cottingin, 476 So.2d 1184 (La.App. 3 Cir. 1985), appeal after remand, 496 So.2d 1379 (La.App. 3 Cir.1986); State v. Morgan, 428 So.2d 1215 (La.App. 3 Cir.1983), writ denied, 433 So.2d 166 (La.1983); See also, State v. Smith, 433 So.2d 688 (La.1983) and State v. Stein, 611 So.2d 800 (La.App. 3 Cir.1992). The sentencing court need not articulate every circumstance or read through a checklist *651 of items to comply with the requirements of La.Code Crim.P. art. 894.1. State v. Pontiff, 604 So.2d 71, 76 (La.App. 3 Cir.1992).
Louisiana Revised Statute 14:31 provides: Whoever commits manslaughter shall be imprisoned at hard labor for not more than forty years. However, if the victim was killed as a result of receiving a battery and was under the age of ten years, the offender shall be imprisoned at hard labor, without benefit of probation or suspension of sentence, for not less than ten nor more than forty years.
In this case, the defendant received 25 years at hard labor, much less than the maximum of 40 years provided by law. Although the sentencing guideline report was consulted in the consideration of the sentence, the court found that this ease fell [fioutside of the E-l grid for a number of reasons. In imposing the sentence, the trial court gave the following reasons:
The Court does not believe that this is a typical case as contemplated by the guidelines and declines to utilize the recommended limits for sentencing suggested by them. The maximum sentence of 126 months which may be imposed thereunder is inappropriate in this case.
The Court after a review of the facts in the case as described by the eye witness in his statement believes that this is not a typical manslaughter case as contemplated by the guidelines. The Court also finds that — finds aggravating circumstances in the case. A lesser sentence will unduly depreciate the seriousness of your crime. The crime you’ve committed is [sic] truly serious offense, as the taking of human life always is.
The evidence indicates that the preparation for this crime began by your own account to the Court-appointed psychiatrist when you purchased the handgun about a month before the killing, during a time when the victim would not return your phone calls. While it is true that drinking was a factor in the commission of this crime, the statements of the witnesses and the evaluations of your condition did not indicate to the Court that your level of voluntary intoxication rose to the level of vitiating specific intent to commit the homicide.
Indeed your behavior following the offense, including your attempt or gesture at suicide indicates to the Court that you fully understood the import of your actions.
Further, the description of your awaiting the return of the victim to her trailer, and the passage of time and events following her return indicate to the Court that this act was clearly intended by you. The Court notes that the circumstances indicate that you knowingly created a risk of death or great bodily harm to more than one person in that the killing — in that after the killing of Mrs. Moore you struggled with Benji Pelligrin, [sic] who was also in the residence at the time of the killing over the gun used in the killing.
The statement further indicates that you assaulted both the victim and Pelligrin [sic] with the gun before shooting. It is noted — this is noted as an aggravating circumstance under the provisions of Louisiana Sentencing Guidelines at Section 209.-B(5).
Further, the aggravated assaults committed before the shooting, in the view of this Court, constitute an aggravating circumstance under the provisions of Section 209.B(6). The victim in this case was a single mother of two children. Her killing by you resulted in significant emotional injury to the family, with the result that the children have had to be separated and cared for by different members of the family. The 16victim was 33 years of age. It is clear that your act in this case has deprived both children of the nurturing— both children of the nurturing effect of their mother during critical years of their coming into maturity. These conditions fit the aggravating circumstances described in Section 209.B(9) of the Sentencing Guidelines.
Finally, the Court notes that while your prior felony conviction of arson in which you burned an inhabited dwelling was taken into consideration in calculating your grid cell, the similarity of the circumstances in your first felony conviction are *652 disturbingly similar to those in the present case.
In the former case, you also believed that you were being betrayed by a female with whom you were intimate, your wife at the time. Your solution to the problem was similar. You began drinking, you made threats of violence with a gun, and with anger and premeditation, you committed a violent felony offense.
The evaluation of your mental status by your defense clinical psychiatrist — psychologist supports the conclusion that you are a man with “deep feelings of inadequacy and personal insecurity,” who desperately needs to be in control, but cannot maintain it “when intoxicated, and whose deficits in anticipating the consequences of behavior prevent you from realistically judging the situation.” ,
The Court-appointed psychiatrist notes your history of repeated resort to violence when you perceive that you are losing someone close to you.
Further, while noting that you are suffering from some mental disorder, she concludes that none of them are incapacitating in nature, or causing a psychotic thinking — or are causing a psychotic thinking disorder, which would eliminate your responsibility for your own behavior. All of these factors cause the Court to conclude that your mental status is that of a person who can be dangerous to society in spite of the lack of malevolence in your appearance.
The Court is of the opinion that you are in need of custodial environment to separate you from society and protect it from your violent impulses. The Court finds this to be an additional aggravating circumstance but not enumerated specifically in Section 209.B, but embraced by and contemplated in the language of Section 209.B(19).
The Court acknowledges the brief filed by the defense in connection with your original sentencing in this case, and all of the letters of support attached thereto urging consideration of your age, the circumstances of the case, and your health. The Court has done this in selecting the length of sentence of 300 months.
The Court’s view of this case is that the maximum sentence of 480 months provided by the statute would be appropriate had you been a younger and healthier man. It is primarily in deference to and in consideration of your age and health that this sentence has been set at 300 months. The mitigating circumstances urged by your previous counsel have been considered where appropriate and balanced with the aggravating circumstances enumerated above in arriving at the present sentence, which is appropriate under the circumstances.
|7It is the opinion of the Court that there are not sufficient mitigating circumstances present in this case to require or even justify a lesser sentence than is imposed. The harm that your actions caused certainly should have been seen and anticipated. I find no grounds in the circumstances of this case which would tend to excuse or justify your behavior.
Examining the court’s reasoning using an Article 894.1 review, the court looked at the following factors in giving the defendant a sentence of 25 years: 1) the severity of the defendant’s offense of taking the life of another; 2) the defendant’s premeditation in the commission of the murder; 3) the defendant’s intoxication did negate his specific intent to kill; 4) the defendant’s attempted suicide following the killing indicated to the trial court that the defendant comprehended the gravity of his actions; 5) the defendant’s reckless disregard in hurting innocent bystanders in his efforts to kill the victim were shocking; 6) the aggravating circumstances of the physical assaults perpetrated upon the victim and the bystander before the shooting; 7) the devastating effect of the defendant’s actions on the victim’s children and family; and 8) the striking similarity between the defendant’s prior felony convictions and this crime.
In his brief, the defendant puiports his central thesis that the state, in its recommendation of a sentence of 20 years, was, in effect, “zealously attempting to exact the life sentence which it had been unable to secure *653 by a conviction for second degree murder.” Nevertheless, the court, in its role as the final arbiter of justice, deemed a period of 25 years as the appropriate sentence for this particular crime, and it readily supplied those factors which it considered in order to reach its decision.
While the defendant cites numerous cases in which the defendant’s sentence looks excessive in comparison, the defendant deftly forgets to mention the true pivotal fact— which the trial court aptly elucidated in its reasoning — that differentiates this case from others: Mr. McManus has a serious felony conviction of wielding violence in order to commit retributory acts for perceived emotional harms. As the | «court pointed out in its reasoning, this defendant has exhibited a deadly pattern of violence that must be curtailed through lengthy incarceration before more innocent people are murdered through the defendant’s delusional machinations.
The trial judge did not abuse his discretion in imposing the sentence of 25 years at hard labor. The sentence is commensurate with the severity of the defendant’s offense. It does not shock our sense of justice. Rather it makes a measurable contribution to acceptable penal goals. It is not a needless imposition of pain and suffering, and it is not “cruel, excessive, or unusual punishment.”
For all of the aforementioned reasons, the defendant’s assignment of error is without merit.
CONCLUSION
For the foregoing reasons, the defendant’s sentence of 25 years at hard labor is affirmed.
AFFIRMED.
THIBODEAUX, J., dissents with written reasons.