610 So.2d 1080 (1992)
STATE of Louisiana
v.
Michael HILL.
No. CR 92-402.
Court of Appeal of Louisiana, Third Circuit.
December 9, 1992.
*1081 Wm. Bennett, Morris Greenhouse, Marksville, for defendant.
J. Edward Knoll, Marksville, for plaintiff.
Before GUIDRY, DOUCET and WOODARD, JJ.
GUIDRY, Judge.
On October 16, 1991, defendant, Michael Hill, was charged by indictment with second degree murder, a violation of La.R.S. 14:30.1. On January 21, 1986, he along with Barry Courtney, Irvin Pierre, and Clifton Jones, Jr., allegedly killed Contrell L. Alexander, a 13 year old boy, with the specific intent to kill or inflict great bodily harm. On January 28, 1992, the court severed the prosecution as to all four defendants and on February 10, 1992, the trial against defendant Hill commenced. After a three day trial, the jury returned a unanimous verdict of guilty of second degree murder. On February 25, 1992, the trial court denied the defendant's motion for a new trial and sentenced him to life imprisonment at hard labor, without benefit of parole, probation or suspension of sentence. Defendant appeals on the basis of two assignments of error. We affirm.

FACTS
On January 21, 1986, Contrell Alexander, a Simmesport resident was brutally murdered. Alexander's grandmother reported him as missing at 11:00 p.m. The next morning, Alexander's body was found in a ditch alongside "Old Highway 1" (now Highway 451), about one mile from the Simmesport corporate limits. The victim was found with a large gaping hole in the right side of his forehead. Bone, hair, and tissue fragments were found as much as 25 feet from the body. The authorities discovered an old fence post near the body containing blood, hair and tissue fragments. The cause of death was a severe bludgeoning to the head.
During 1986, defendant, Michael Hill, was questioned several times by Avoyelles Parish detectives about Alexander's death. At that time, the voluntary statements given by Hill were all exculpatory.[1] On August 27, 1991, defendant gave an inculpatory statement, placing himself at the scene of the crime and implicating Jones in the murder. Jones was then questioned. The statements of both Hill and Jones, taken together, place them both at the scene of the crime.
Jones[2] testified at trial that, on the night in question, the four co-defendants, Jones, Hill, Courtney and Pierre, and the victim, Alexander, left in his van from the Washington Teenage Center in Simmesport. While riding around, an argument ensued between Hill, Courtney and Alexander. Hill then demanded that Jones go to the Anderson home where Hill, Courtney and Alexander proceeded into the house. Jones remained in his van with Pierre. Jones stated that he did not leave because he was *1082 afraid of Hill. Shortly thereafter, Hill and Courtney exited the house carrying a limp form wrapped in a dark blanket and loaded it into the back of the van. Jones noted that Alexander's tennis shoes were sticking out of the blanket and assumed that Alexander was wrapped in the blanket.
After leaving the Anderson home, the group retraced the route taken, proceeding to La. 105 and then to its intersection with Highway 1 in Simmesport. Before arriving at the intersection defendant spoke of disposing of the body in the river, but Jones protested and instead took a left turn onto Highway 1. The group then traveled north on Highway 1, taking a right turn on a small road near Yellow Bayou Park. Jones stated that, at that time, Hill put a pistol behind his head and stated "Pain was for everybody" if he were "to tell, or do anything, or to try to stop what was going on". They proceeded down this small lane until its intersection with Old Highway 1 (Highway 451), turned right, and drove eastward toward Simmesport. Jones testified that, shortly after this right turn, the front driver's side wheel began to vibrate. Jones stopped, and Hill remedied the problem with a four way lug wrench. The group proceeded a short distance further, during which time Jones heard moans from the back of the van followed by thumping sounds. He figured the sounds heard were blows delivered to Alexander by either Hill or Courtney. Hill then directed Jones to stop the van. While Hill and Courtney exited the side door of the van, Hill tripped on the van ledge and into the roadside ditch. Hill and Courtney removed Alexander from the rear of the van. Jones stated that, at this point, he again heard five or six thumping sounds, as though someone was beating a rug.
Thereafter, the group traveled toward Simmesport from the Old Highway 1 site, whereupon they turned around and returned to the murder scene at Hill's insistence. Hill retrieved the blanket that Alexander was wrapped in. They then traveled on Old Highway 1, turned left on Wayside Lane, and passed in front of the Mount Calvary Baptist Church which was operated by the victim's grandfather. At this point, Hill commented that they should have thrown the body there. Jones proceeded to Simmesport to drop off Pierre and Courtney and then traveled northward on Highway 1 to Hamburg where he dropped off Michael Hill at his home on Voorhies Lane.
Jones further testified that, after picking up a friend in Moreauville and visiting his girlfriend, he returned to Simmesport, participated briefly in the search for Alexander, dropped off his friend and washed his van at a local carwash. He also vacuumed the interior and cleaned blood off of the rear carpet area and four way lug wrench. David Antoine testified that he witnessed Jones cleaning his van at the carwash during the late evening hours of January 21, 1986.
In Hill's recorded oral statements of August 13 and August 27, 1991, and Jones' statement of August 29, 1991, each precisely and similarly described the route taken on the night of the murder. Furthermore, Hill, on August 13, 1991, and Jones, on August 29, 1991, separately traced the route in an automobile with Detective Lemoine and his assistants. The routes described by the parties were identical except for one minor inconsistency concerning a turnaround point. In fact, defendant's statements and Jones' statement were almost identical in all particulars except for the extent of the other's participation in the killing.
Dr. George McCormick, the State's expert forensic pathologist who performed the autopsy on the victim, testified that the fatal head injuries were consistent with being pummeled by the previously mentioned fence post and the socket portion of a lug wrench. Defendant, in his August 13, 1991 recorded statement, confirmed with particularity that a fence post and a lug wrench were used to beat the life out of Alexander.

ASSIGNMENT OF ERROR NO. 1
Defendant asserts that the jury verdict is contrary to the law and the evidence presented. Defendant urges that the *1083 State's evidence consisted mainly of the testimony of Jones, with whom the State plea bargained, along with the one statement chosen by the State that was given by defendant to the Avoyelles Parish Sheriff's Office. Hill contends that these statements were sufficiently rebutted by the evidence presented in defense.
When the issue of sufficiency of the evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La. 1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino, supra, citing State v. Richardson, 425 So.2d 1228 (La.1983). In order for the State to obtain a conviction, it must prove the elements of second degree murder beyond a reasonable doubt, i.e., the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm.
Defendant urges that the time of death is an "extremely important issue in the case at bar". He argues that the testimony of Detective Bob Venable indicated that the coroner, Dr. F.P. Bordelon, assigned 10:45 p.m.-11:00 p.m. as the time of death. Defendant contends that if Alexander was killed at 10:45 p.m., he was miles away at his home near Bordelonville. Defendant sought to substantiate this theory through the introduction of a January, 1986 telephone bill to show that a long distance call was made by defendant to Louise Goudeau, his girlfriend, starting at 8:45 p.m. and lasting 22 minutes until 9:07 p.m. Then, at 9:27 p.m., a 99 minute call was made to Ms. Goudeau lasting until 11:00 p.m. Louise Goudeau confirmed that on the night of January 21, 1986, she spoke with Hill on several occasions. Defendant's father, Monroe Hill, testified that, on January 21, 1986, he was in the hospital with back problems in Beaumont, Texas, and that the entire Hill family, with the exception of Michael, was there also.
Defendant asserts that Jones was not telling the truth when he testified that the murder definitely occurred prior to 9:00 p.m. because Alexander's mother, grandmother and aunt testified that they had seen Contrell between the hours of 6:00 p.m. and 9:00 p.m. Defendant insinuates that Jones implicated Hill to obtain a better deal for himself.
Defendant's reliance on the time of death to refute his involvement in the murder is not persuasive. Although the victim's whereabouts from 6:00 to 9:00 p.m. were established through the testimony of the victim's mother, grandmother and aunt, this does not negate the possibility of defendant's participation in the murder. Furthermore, a review of their testimony reflects substantial discrepancies regarding their estimation of time. For example, their combined testimony established that Alexander chronologically went to his mother's place of employment (Earney's Restaurant), his grandmother's home, his cousin's home, his grandmother's home and Earney's Restaurant. His final visit to the restaurant occurred between 6:00 and 6:30 p.m., according to Regina Courtney, the victim's aunt, and between 8:30 and 8:45 p.m. according to his mother. Moreover, the victim's grandmother testified that he came to her house for the first time at 4:00 p.m. and for the second time when it was nearing 9:00 p.m.
According to Detective Venable, the 10:45-11:00 p.m. time of death was based upon the coroner's estimated time which, in turn, was based on the time that Alexander was reported missing. Therefore, the actual time of death was not definitely established. Because the actual time of death is unsettled, defendant's reliance on the phone records and testimony of Louise Goudeau is not sufficiently exculpatory. If *1084 the murder occurred earlier in the evening, the two phone calls Hill made to Louise Goudeau later in the evening would not exculpate him.
Although the time of death is inconclusive, other evidence clearly indicates Hill was involved in the murder. In addition to corroborating evidence given by defendant and Jones of the route taken and the murder weapons used, several other consistent facts were given by each of them:
1. The persons present were Hill, Jones, Courtney, Pierre and the victim, Alexander.
2. Jones' van was the vehicle used.
3. Something happened to Alexander at the Anderson house.
4. Alexander was wrapped up in a blanket and put into the back of Jones' van.
5. Alexander's tennis shoes were sticking out of the blanket.
6. Mention was made of dumping the body in the river.
7. The group encountered trouble with a van tire which was fixed just after turning upon Old Highway 1.
8. The van was stopped shortly after the repair on Old Highway 1 whereupon Alexander was taken out through the back doors.
9. Hill tripped into the ditch while exiting the van.
10. Alexander was beaten and left on the side of the road.
11. Alexander's body was left and the van proceeded to Simmesport then returned to the scene whereupon the blanket used to cover Alexander's body was retrieved.
12. Upon passing the Calvary Baptist Church on Wayside Lane, a comment was made that the body should have been dumped there.
12. A gun was drawn by one co-defendant to threaten another co-defendant.
Furthermore, the State presented the testimony of Tia Jones who dated the defendant for approximately four months beginning in January of 1990. Mrs. Jones stated that, almost every other day, she and Hill discussed the murder. She testified that on these occasions, the defendant would generally state that "they killed someone; and that he didn't have anything to do with it; that he watched". Another time, he admitted to personally killing someone then retracted the statement by saying he merely watched the murder. On another occasion, Tia Jones stated that she was awakened at night by Hill who pinned her arms to the bed and screamed "I killed someone, I killed someone, I killed someone". Although defendant never specifically stated to her that Alexander was the person murdered, he indicated the victim was a young boy. Tia Jones also stated that the defendant owned a white-handled handgun which he often kept in his boots. This is relevant because Hill, in his statement, mentioned that he was afraid of Jones because Jones carried a white or pearl handled pistol. Jones, on the other hand, testified that Hill had a pistol and threatened him with it.
Even giving the defendant the benefit of the doubt as to the level of his involvement, the second degree murder conviction is still warranted based on the law of "principals". La.R.S. 14:24 provides as follows:
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
First, defendant stated that he was there when the child was killed. Although his actual participation in the murder is arguably inconclusive, he stated that he was there, helped open the van door, and helped put the victim in the van. The State clearly established defendant's guilt either as an active participant in the crime or under the theory of the law of principals. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 2
By this assignment of error, defendant contends that the trial court erred in refusing to admit into evidence, through the testimony of Detective Clint Lemoine, exculpatory statements made by defendant to Detective Lemoine, Detective Eldon Sayes and other members of the Avoyelles Parish Sheriff's Department.
*1085 The State, through the testimony of Detectives Lemoine and Sayes, introduced into evidence a tape recorded statement of the defendant dated August 13, 1991, and an oral statement dated August 27, 1991. These statements were introduced into evidence pursuant to Louisiana Code of Evidence Article 801(D)(2)(a), which provides:
D. Statements which are not hearsay. A statement is not hearsay if:
* * * * * *
(2) Personal, adoptive, and authorized admissions. The statement is offered against a party and is:
(a) His own statement, in either his individual or a representative capacity;
* * * * * *
The two inculpatory statements clearly fell within the provisions of this article.
On cross-examination, defense counsel attempted to have Detective Lemoine testify as to exculpatory statements made by Hill in 1986. The State objected, asserting that, as the statements pertained to the testimony of Detective Lemoine, the statements were hearsay and inadmissible because no hearsay exception applied. On the other hand, defendant urges that the entire investigation conducted by the Avoyelles Parish Sheriff's Office was relevant and that all prior statements from all persons were relevant evidence. He further argued that, as part of the public record, such statements were exceptions to the hearsay rule. The defense also argued that, by not allowing these prior exculpatory statements into evidence through the detective's testimony, the defendant would be forced to testify and impeach himself.
The trial court sustained the State's objection, concluding that the statements, which were self-serving in nature, did not fit into any hearsay exception which would allow their admission. Defendant objected to the court's ruling. The court later reaffirmed its ruling by denying defendant's motion for a new trial.
On appeal, defendant contends that the trial court was "forcing the defendant to either live by the one statement chosen by the state or force the defendant to testify" in contravention of his rights guaranteed by the Fifth Amendment to the United States Constitution and La.Const. Art. I, Sec. 16. The State asserts that there is no violation of Article I, Sec. 16 of the La. Const. of 1974 because, although that article states "no person shall be compelled to give evidence against himself", it also entitles "an accused ... to testify in his own behalf". In order for the prior exculpatory statements to be admissible, the State argues that they would have to be introduced in connection with defendant's own testimony since no hearsay exception applies.
We find no merit in defendant's contentions. In State v. Mattio, 212 La. 284, 31 So.2d 801 (1947), the State's witness (a police superintendent), while under cross-examination, was questioned about a written statement given by the accused. The State objected on the ground that the declaration or statement of the accused was self-serving and inadmissible. The Mattio court agreed, finding that "the principal reason for denying a defendant the right to introduce in evidence his exculpatory declaration is that if he were permitted to do so he would be presenting his testimony to the jury without taking the witness stand and without running the risk of impeachment on cross-examination". Mattio, 31 So.2d at 808.
In State v. Ford, 489 So.2d 1250 (La. 1986), certiorari granted and vacated, 479 U.S. 1077, 107 S.Ct. 1272, 94 L.Ed.2d 133 (1987), on remand, 503 So.2d 1009 (La. 1987), defendant gave two statements to the police that were admitted into evidence. At trial, the defendant attempted to introduce a third statement. The prosecutor objected to admission of the third statement because of its self-serving nature. The trial court sustained the State's objection. The Louisiana Supreme Court, relying upon La.R.S. 15:450,[3] determined that the three statements were separate and *1086 distinct and that the third statement was properly excluded upon the prosecution's objection that the statement was a self-serving declaration. The State is "under no obligation to introduce exculpatory evidence at trial". See also State v. Crowley, 475 So.2d 783 (La.App. 4th Cir.1985).
Defendant claims that by forcing him to introduce the prior exculpatory statements in connection with his own trial testimony, the court violated his constitutional right to decline to testify or give evidence against himself. Stated another way, defendant contends that forcing him to testify in order to get the exculpatory statements into evidence would subject him to the State's cross-examination, thus potentially violating his constitutional right against self-incrimination.
In State v. Gremillion, 542 So.2d 1074 (La.1989), the court held that an otherwise inadmissible hearsay statement which does not fit into one of the recognized exceptions to the hearsay rule should be admitted if it is reliable and trustworthy and to exclude it would interfere with defendant's constitutional right to present a defense. In State v. Martin, 582 So.2d 306 (La.App. 1st Cir.1991), writ denied, 588 So.2d 113 (La.1991), the court found that "even if the Louisiana Code of Evidence prohibits the introduction of certain testimony, in those rare cases where the evidentiary rule impermissibly impairs the defendant's right to present a defense, the evidence still should be admitted". The court then declined to apply this narrow jurisprudentially created exception to that particular case because it found that the defendants therein were not prohibited from presenting their defense. Constitutional guarantees do not assure the defendant the right to the admissibility of any type of evidence, only that which is deemed trustworthy and has probative value. State v. Scott, 588 So.2d 1365 (La.App. 2d Cir.1991), writ denied, 592 So.2d 1298 (La.1992).
The narrow exception, referred to above, should be sparingly applied and has only been applied in the Gremillion case where the court found the existence of exceptional circumstances in that, by not allowing the defendant to place the statement before the jury, the trial court impermissibly impaired his constitutional right to present a defense to the crime charged. The exception has not been applied to a case such as the one before us wherein defendant claims that his right against self-incrimination, i.e., to not testify if he so chooses, has been infringed.[4]
In order for the prior exculpatory statements to be admitted without defendant testifying at trial, it must be shown that the statements are reliable and trustworthy. A thorough review of the record and in particular of the statements sought to be admitted with the detective's testimony indicates that the statements are not reliable and trustworthy. Clearly, defendant seeks to admit these prior exculpatory statements to disprove the substance of his August 13, 1991 and August 27, 1991 statements, which were substantially corroborated by Jones' August 29, 1991 statement and Jones' trial testimony. In other words, defendant's aim in attempting to admit the prior exculpatory statements is to disprove his own veracity in the 1991 statements. Defendant has failed to establish, under these circumstances, the reliability and trustworthiness of the prior exculpatory statements. For these reasons, the trial court did not err in excluding the statements in question.
For the above and foregoing reasons, defendant's conviction and the sentence imposed are affirmed.
AFFIRMED.
NOTES
[1] These statements were not introduced by the State and the trial court determined them to be hearsay.
[2] Jones testified pursuant to a plea bargain agreement in which he pled guilty to manslaughter.
[3] La.R.S. 15:450 provides:

Every confession, admission or declaration sought to be used against any one must be used in its entirety, so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole statement may afford.
[4] We are of the opinion that this narrow jurisprudential exception should not be applied to the circumstances of the present case. However, we address the applicability of the exception on its merits due to defendant's constitutional claims.