773 So.2d 849 (2000)
STATE of Louisiana
v.
Larry Stephen McBRIDE, Sr.
No. 00-00422-KA.
Court of Appeal of Louisiana, Third Circuit.
November 15, 2000.
Rehearing Denied December 28, 2000.
*851 Charles F. Wagner, District Attorney 9th JDC, Alexandria, Counsel for Plaintiff-Appellee State of Louisiana.
Loren Marc Lampert, Assistant DA, 9th JDC, Alexandria, Counsel for Plaintiff-Appellee State of Louisiana.
Anthony James Hebert, Baton Rouge, Counsel for Defendant-Appellant Larry Stephen McBride, Sr.
Joseph Rodney Messina, Baton Rouge, Counsel for Defendant-Appellant Larry Stephen McBride, Sr.
Court composed of Hon. JOHN D. SAUNDERS, Hon. JIMMIE C. PETERS, and Hon. GLENN B. GREMILLION.
GREMILLION, J.
The defendant, Larry Stephen McBride, Sr., appeals his conviction and sentence for *852 second degree battery. For the following reasons, we affirm.

FACTS
Defendant and the victim, A.J. Chicola, were neighbors in Rapides Parish, and had a long-standing dispute regarding their common property line. This dispute sometimes degenerated into obscene gestures and fights. On February 23, 1999, at approximately 1:00 p.m., Chicola and Defendant got into a confrontation which ended when Defendant cut Chicola's throat, damaging his jugular vein and thyroid blood vessels.
Defendant was subsequently arrested and charged with aggravated battery, in violation of La.R.S. 14:34. He was tried by a jury and convicted of the responsive verdict of second degree battery, in violation of La.R.S. 14:34.1. Thereafter, the trial court sentenced Defendant to four years and ten months imprisonment and ordered him to pay a $1,000 fine. The trial court then suspended all but six months of the prison term and placed Defendant on supervised probation with special conditions. Defendant timely appealed his conviction and sentence, raising ten assignments of error.

ASSIGNMENTS OF ERROR
Defendant claims that the trial court erred:
(1) In granting the State's motion to quash the subpoenas for the District Attorney and two Assistant District Attorneys;
(2) In granting the State's motion in limine preventing Defendant from questioning Chicola regarding whether he was ever prosecuted by the Rapides District Attorney's Office for violent crimes;
(3) In sustaining the State's objection preventing Defendant's wife from testifying about Defendant's "excited utterances" shortly after the incident at issue;
(4) In denying Defendant's Motion for a Mistrial based on the State's questioning of Defendant regarding other crimes evidence;
(5) In denying Defendant a fair trial in not allowing him to present a defense;
(6) In not allowing Defendant's wife to testify regarding his "excited utterances," which required him to testify, thereby, denying his right against self-incrimination.
(7) In affirming Defendant's conviction, which was based on insufficient evidence, and in denying his motion for post-verdict judgment of acquittal.
(8) In denying Defendant's Motion for New Trial;
(9) In denying Defendant's Motion for Reconsideration of Sentence;
(10) In imposing an excessive sentence.

SUFFICIENCY OF EVIDENCE
In his seventh assignment of error, Defendant attacks the sufficiency of the evidence introduced against him at trial. We will address this issue first because, if we find the evidence insufficient and reverse the conviction, there will be no need to discuss the remaining assignments of error. State v. Hearold, 603 So.2d 731 (La. 1992). In his Motion for Post-Verdict Judgment of Acquittal in the trial court, and in his appeal before us, Defendant contends the State did not prove its case beyond a reasonable doubt. We have discussed sufficiency reviews in detail as follows:
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); State ex rel. *853 Graffagnino v. King, 436 So.2d 559 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino, 436 So.2d 559 (citing State v. Richardson, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.
State v. Kennerson, 96-1518, pp. 4-5 (La. App. 3 Cir. 5/7/97); 695 So.2d 1367, 1371, appeal after remand, 97-1682 (La.App. 3 Cir. 6/3/98); 715 So.2d 518.
La.R.S. 14:33 defines battery as "the intentional use of force or violence upon the person of another." The original charge in this case was aggravated battery, which is defined by La.R.S. 14:34 as "a battery committed with a dangerous weapon." The jury convicted Defendant of second degree battery, which is defined in La .R.S. 14:34.1 as "a battery committed without the consent of the victim when the offender intentionally inflicts serious bodily injury." Serious bodily injury is defined as "bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death." La. R.S. 14:34.1.
While we note that Defendant has argued justification or self-defense, he has conceded that he drew and opened a knife and cut Chicola. If we disregard the self-defense argument (which will be discussed later in this opinion), Defendant's admission that he intentionally used a weapon against Chicola would support a conviction for aggravated battery. In view of the evidence that Chicola was cut all the way across his throat, the evidence would also support a conviction for second degree battery as the elements of both crimes were clearly proven. Therefore, the only logical argument left to Defendant is his claim of self-defense.
The legal parameters of self-defense are set forth in La.R.S. 14:19:
The use of force or violence upon the person of another is justifiable, when committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against property in a person's lawful possession; provided that the force or violence used must be reasonable and apparently necessary to prevent such offense, and that this article shall not apply where the force or violence results in a homicide.
The burden of demonstrating selfdefense rests upon Defendant. In State v. Hall, 606 So.2d 972, 973-74 (La.App. 3 Cir.1992), writ denied, 93-0051 (La.11/11/94); 644 So.2d 385, this court stated:
When a defendant in a homicide case claims self-defense, the state has the burden of establishing beyond a reasonable doubt that the defendant did not act in self-defense, State v. Garcia, 483 So.2d 953 (La.1986). In non-homicide cases, such as this, the defendant must carry the burden of proving self-defense by a preponderance of the evidence. State v. Barnes, 491 So.2d 42 (La.App. 5 Cir.1986); State v. Mason, 499 So.2d 551 (La.App. 2 Cir.1986). The issue of self-defense requires a dual inquiry: (1) an objective inquiry into whether the force used was reasonable under the circumstances; (2) a subjective inquiry into whether the force was apparently necessary, State v. Perkins, 527 So.2d 48 (La. App. 3 Cir.1988).
Defendant claims self-defense asserting that Chicola was the aggressor and that he was more credible than Chicola. Both Defendant and Chicola testified at *854 trial, with each characterizing the other as the aggressor. Chicola testified that, on the day of the incident, he was leaving his house to pick up his son from school. He saw Defendant, who had dismounted from his horse, about to go through a gate onto the road running between their properties. Chicola claims Defendant made an obscene gesture, so he went back inside his house hoping Defendant would ride on and go about his business. Chicola testified that he waited a short while before leaving his house and getting into his van, but Defendant was still nearby. Chicola said that Defendant was slightly ahead of him on horseback when he drove onto the road. According to Chicola, Defendant appeared to deliberately pull his horse in front of the van, as if to block it or provoke an accident. Chicola then stopped the van and got out to confront Defendant.
Chicola testified that Defendant lunged the horse toward him, so he grabbed the bridle. According to Chicola, Defendant began whipping him in the face with the reins, and "goosing" the horse forward toward him. Chicola claimed that he leaped up at Defendant a few times, trying to use his free hand to stop the reinwhipping. At some point, he grabbed Defendant's shirt, ripping it. Chicola finally let go of the horse's reins when he saw Defendant reaching into his back pocket. Chicola testified that he headed back towards his van, which was only a few steps away. However, he heard Defendant, who was behind him, say, "I'm going to kill you." Chicola said that, as he turned to face Defendant, he did not see the knife, but felt the cut, and saw blood begin spewing. He suffered damage to his jugular vein and thyroid blood vessels, as a result of having his throat cut.
Chicola testified that he got back into his van, holding his throat as tight as he could to stop the bleeding. He put the van in gear, took off, and ran into a fence. According to Chicola, he then spun his tires going nowhere. He testified that the injury hampered his driving because he had to steer and shift gears with one hand, while keeping the other hand on his wound. Chicola said he could not look up because that aggravated the bleeding. He went in circles or "doughnuts" in nearby grass, then finally gained control of the van and returned to his house. He then grabbed a rag and, while holding it to his throat, called 911 telling the operator that Defendant had cut his throat and he was bleeding to death. According to Chicola, an ambulance responded and he was administered emergency medical treatment and later airlifted to Rapides General Hospital.
On the other hand, Defendant testified that he worked cattle with his friends, Phil Thomas and Bobby Roberts, on the morning of the altercation. He testified that they had dinner at Roberts' house, then Roberts and Thomas dropped him off at his house so he could get his own horse ready to work more cattle. Thomas and Roberts proceeded to a nearby area to start work.
According to Defendant, he proceeded to the gate on horseback, unchained it, then passed through and re-chained it, all without dismounting or seeing Chicola. As he closed the gate, he heard a vehicle coming, then heard a sound variously described as a "whew," a "kwirk," or a "scruh." When he looked up, Chicola's van was within a foot of him and then Chicola attacked him. Defendant further testified that Chicola grabbed the horse's bridle with his left hand, then jumped up and hit him, causing him to lose his glasses on the first blow.
Defendant testified that he was involved in a "horse accident" in May 1997, that put him in a three-week coma and left him with permanent impairment to his strength, coordination, speech, and emotional control, and that, without his glasses, he has double vision. Concerning the incident in question, Defendant testified that Chicola jumped and hit him while cursing and uttering threats to him. Defendant also claimed that Chicola turned the horse's head in a manner meant to *855 topple the animal. According to Defendant, Chicola said that, if he could turn the horse over, he would kill him. Defendant claimed that he feared for his life, and that he reached into his back pocket, removed and opened a knife, and cut Chicola. He testified that he normally carried a smaller knife, but he had a larger knife with a six inch blade in his pocket for castrating calves on the day of the incident. Defendant further testified that he did not intend to cut Chicola, but, on cross-examination, he admitted he would have shot Chicola if a gun had been available.
Both Thomas and Roberts verified that Defendant helped them work cattle on February 23, 1999. After dropping Defendant off, each of the men saw a small part of the fight between him and Chicola. While waiting for the Defendant to rejoin them, Thomas, who was approximately 300 yards away from the scene, noticed Chicola's van near Defendant's gate. Being aware of the neighbors' long-standing boundary dispute, Thomas alerted Roberts and they got into a truck and headed toward the scene. From approximately 350 yards away, Thomas saw Chicola with his right hand on the bridle or reins of Defendant's horse, and Defendant appeared to be hitting Chicola with something. According to Thomas, he saw Chicola move away from Defendant and head toward his van. Thomas and Roberts then lost sight of the men as they drove around a barn. When they were able to see the men again, Thomas saw Defendant riding toward his house, looking back over his shoulder. Chicola made a couple of circles in his van, then drove to his house. Thomas said he did not pursue the matter because he did not realize that Chicola had been injured.
Roberts testified that he basically saw the same thing, but he remembered seeing Chicola holding the head area of the horse, apparently with his left hand, while jumping up and swinging at Defendant with his right hand. He said that, after going around the barn, he saw Chicola's van zigzagging, as if to run over Defendant and his horse. This impression was also corroborated by Thomas in his testimony.
The testimony at trial corroborated Defendant's testimony regarding his previous accident and subsequent impairment, as well as the troubled history between the two men, which included prior altercations. In light of all the evidence, we find that Defendant's self-defense claim rested upon his own testimony. The jury was left to make a credibility determination, which was entirely within its province. Thus, the jury was free to disregard Defendant's testimony and find that he did not meet his burden in demonstrating justification. Although it declined to find him guilty as charged, the jury apparently did not lend full credibility to his testimony, finding him guilty of the responsive verdict of second degree battery of Chicola. Therefore, for the reasons discussed above, we find sufficient evidence to support the verdict; this assignment of error is without merit.

STATE'S MOTION TO QUASH SUBPOENAS
In his first assignment of error, Defendant claims the trial court erred by quashing Defendant's subpoenas for the Rapides Parish District Attorney and two assistant district attorneys. Defendant's purpose for these subpoenas was to demonstrate that he had filed complaints with the District Attorney's Office against Chicola before the incident at issue, arguing that this would have corroborated his self-defense theory. The State moved to quash the subpoenas relying on the attorney-client privilege set forth in La.Code Evid. art. 507.[1] However, at the hearing on the *856 motion to quash, the State stipulated that there was no attorney-client relationship with Defendant. After hearing the arguments of counsel, the trial court granted the State's motion to quash the subpoenas, ruling that the prosecutors subpoenaed had an attorney-client privilege with the State of Louisiana and that Defendant failed to carry his burden under Article 507.
Initially, we note that the State stipulated that no attorney-client relationship existed between the State and Defendant; therefore, there can be no attorney-client privilege protected under Article 507 between those two parties. However, the trial court ruled that the attorney-client privilege existed between the assistant district attorneys and the State. At issue is whether the State of Louisiana, in this instance, is a "client" under La.Code Evid. art. 506(A)(1), which defines client as "a person, including a public officer, corporation, partnership, unincorporated association, or other organization or entity, public or private, to whom professional legal services are rendered by a lawyer, or who consults a lawyer with a view to obtaining professional legal services from the lawyer." It is clear that the State can be a "client," but it must appear through a "representative of the client," which is a "person having authority to obtain professional legal services, or to act on advice so obtained, on behalf of the client" or "who makes or receives a confidential communication for the purpose of effectuating legal representation for the client, while acting in the scope of employment for the client." La.Code Evid. art. 506(A)(2)(a) and (b). (Emphasis added). A "`lawyer' is a person authorized, or reasonably believed by the client to be authorized, to practice law in any state or nation." La.Code Evid. 506(A)(3). Clearly, the statute envisions communications between attorneys and clients to be communication between persons. The persons who communicated in this situation were the prosecutors and Defendant, with the prosecutors representing the State. Thus, there were no protected communications between the State and the prosecutors. Accordingly, the trial court erred in finding an attorney-client privilege existed.
The State also argued that it had a work product privilege, which would prevent disclosure of information obtained during any prior conversations with Defendant relative to other charges. La.Code Evid. art. 509 states, "Nothing in this Chapter shall be construed as derogating from the protection afforded by the rules relating to work product."
For a definition of "work product," we look to La.Code Civ.P. art. 1424 which states, in part:
The court shall not order the production or inspection of any writing obtained or prepared by the adverse party, his attorney, surety, indemnitor, expert, or agent in anticipation of litigation or in preparation for trial unless satisfied that denial of production or inspection will unfairly prejudice the party seeking the production or inspection in preparing his claim or defense or will cause him undue hardship or injustice.
"The purpose of the work product doctrine is not merely to assist the client in obtaining complete legal advice, but also to afford the attorney a `zone of *857 privacy' within which he is free to evaluate and prepare his case without adversarial scrutiny." Hodges v. Southern Farm Bureau Cas. Ins. Co., 433 So.2d 125, 131-32 (La.1983). Moreover, the privilege created by the work product doctrine is qualified, not absolute. Id. The comments to Article 509 reference La.Code Crim.P. art. 723, which states:
Except as provided in Articles 716, 718, 721, and 722, this Chapter does not authorize the discovery or inspection of reports, memoranda or other internal state documents made by the district attorney or by agents of the state in connection with the investigation or prosecution of the case; or of statements made by witnesses or prospective witnesses, other than the defendant, to the district attorney, or to agents of the state.
In State v. Rey, 351 So.2d 489 (La.1977), the Louisiana Supreme Court held that Article 723 represents a codification of the work product privilege.
In this case, when we consider the district attorney's role as a representative of the State,[2] there is nothing in the record suggesting that Defendant was seeking the district attorney's work product. The information sought to be protected by the District Attorney's Office was not a writing obtained or prepared in anticipation of litigation or in preparation for trial. Rather, it appears that Defendant desired to bring out the fact that, prior to the offense sub judice, he had visited the district attorney's office to file a complaint against Chicola. Further, in the context of this case, the denial of production or inspection may have unfairly prejudiced Defendant in presenting his defense. Finally, and most compelling, Article 723, by its own terms, removes the statements of a defendant from the protection of the privilege. We would find this to be the case, even though at the time Defendant approached the district attorney's office, he was alleging himself to be a victim. Accordingly, we find that the State's argument to the trial court concerning the work product privilege is without merit.
The State also argued, before the trial court and in this court, that the testimony sought by Defendant was inadmissible hearsay. We agree. "`Hearsay' is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." La.Code Evid. art. 801(C). A "statement" is an oral or written assertion or a nonverbal conduct, if intended by that person to be an assertion. La.Code Evid. art. 801(A). The declarant is the person who makes the statement. La.Code Evid. art. 801(B). In this case, it was Defendant's (declarant) intent to prove that he made complaints against Chicola (the proof of the matter asserted), by introducing into evidence statements made by persons other than Defendant. As such, the intended statements are classic hearsay. Under the "hearsay rule," "[h]earsay is not admissible except as otherwise provided by [the Code of Evidence] or other legislation." La.Code Evid. art. 802. We can find no exception to the hearsay rule which would allow the admission of the testimony sought by Defendant.[3]
*858 The State also contends Defendant had other practicable means of adducing the information. Defendant could have elicited this evidence by testifying that he had gone to the district attorney's office to file the complaints. Certainly, Defendant has a right not to take the stand, and he argued that point before the lower court. We addressed a similar issue in State v. Corley, 97-235 (La.App. 3 Cir. 10/8/97); 703 So.2d 653, writ denied, 97-2845 (La.3/13/98); 712 So.2d 875, in which the defendant was convicted of the second-degree murder of his wife. In that case, the trial court maintained the state's motion in limine barring the defendant from introducing evidence regarding the victim's alleged infidelity. On appeal, the defendant argued that the exclusion of that evidence forced him into a position of having to testify in order to get the information before the jury. Since he elected not to testify, he argued that the exclusion violated his right to present a defense. We wrote, quoting State v. Hill, 610 So.2d 1080, 1086 (La.App. 3 Cir.1992):
In State v. Gremillion, 542 So.2d 1074 (La.1989), the court held that an otherwise inadmissible hearsay statement which does not fit into one of the recognized exceptions to the hearsay rule should be admitted if it is reliable and trustworthy and to exclude it would interfere with defendant's constitutional right to present a defense. In State v. Martin, 582 So.2d 306 (La.App. 1st Cir.), writ denied, 588 So.2d 113 (La.1991), the court found that "even if the Louisiana Code of Evidence prohibits the introduction of certain testimony, in those rare cases where the evidentiary rule impermissibly impairs the defendant's right to present a defense, the evidence still should be admitted." The court then declined to apply this narrow jurisprudentially created exception to that particular case because it found that the defendants therein were not prohibited from presenting their defense. Constitutional guarantees do not assure the defendant the right to the admissibility of any type of evidence, only that which is deemed trustworthy and has probative value. State v. Scott, 588 So.2d 1365 (La.App. 2d Cir.1991), writ denied, 592 So.2d 1298 (La.1992).
The narrow exception, referred to above, should be sparingly applied and has only been applied in the Gremillion case where the court found the existence of exceptional circumstances in that, by not allowing the defendant to place the statement before the jury, the trial court impermissibly impaired his constitutional right to present a defense to the crime charged. The exception has not been applied to a case such as the one before us wherein defendant claims that his right against self-incrimination, i.e., to not testify if he so chooses, has been infringed.
This court found that the trial court did not err in excluding the statements because the defendant had not shown the statements were reliable and trustworthy.
As in Hill, the jurisprudential exception should not be applied to the present case. The defendant was not prevented from asserting a defense because of the trial court's exclusion of the evidence. Rather, he chose not to present that defense by refusing to testify. Nevertheless, even applying the exception to the case sub judice, the evidence should still be excluded. As stated in Hill, "[c]onstitutional guarantees do not assure *859 the defendant the right to the admissibility of any type of evidence, only that which is deemed trustworthy and has probative value." Id. at 1086. Because no evidence was introduced to show that the defendant knew of the previous sexual encounter and that this knowledge provoked him into killing his wife, the evidence was not probative to the issue before the jury.
Corley, 703 So.2d at 663.
In the present case, Defendant's argument fails for similar reasons. As already noted, the jury heard evidence of his turbulent history with Chicola. Both Chicola and Defendant acknowledged a "tussle" in a church parking lot, apparently in the 1980's,[4] and a physical altercation in 1997. Defendant's wife, Cindy McBride, testified that she called authorities to respond to the 1997 altercation, and that Defendant had a pending civil suit against Chicola because of this incident. She further testified that Defendant needed four stitches and had cheek fractures after Chicola punched him as a result of the 1997 altercation. We note that Defendant took the stand in his own defense, but he failed to show that the lower court's ruling forced him to testify. It is more likely that practical necessity caused Defendant to testify, since he bore the burden of demonstrating self-defense and was the only witness who could refute or counter Chicola's testimony regarding all the facts surrounding the fight. In light of Corley, we find that Defendant failed to show that there was no other means of putting the evidence of the prior conflicts before the jury.
Thus, for the reasons set forth above, we find that this assignment of error lacks merit.

MOTION IN LIMINE, RELEVANCY
In his second assignment of error, Defendant contends that the trial court erred in granting the State's Motion In Limine, which prevented him from asking Chicola if he was ever prosecuted by the Rapides District Attorney's Office for a prior violent offense against him. Defendant wanted to present evidence suggesting that the district attorney's office had deliberately refrained from prosecuting Chicola for past offenses against him, but proceeded against Defendant for a violent offense against Chicola. Defendant argues that this prohibition improperly limited his right to a fair trial, to confront the witnesses against him, and to put on a defense as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article One, Section Sixteen of the Louisiana Constitution. The State countered by arguing that the ruling did not prohibit Defendant from asking Chicola if he had ever committed any violent offense against him and that questioning Chicola about such a prior prosecution was irrelevant to the case at hand.
We have noted that the record is clear that the two men had a turbulent history, including fights. Thus, the trial court did not prevent Defendant from presenting evidence that he had reason to fear Chicola, in part, because of their past encounters. Thus, Defendant has not shown prejudice on this issue.
More importantly, evidence regarding the State's decisions of whom to prosecute (or not prosecute) is irrelevant to the case sub judice. "`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." La.Code Evid. art. 401. Regardless of whether Defendant was upset over past decisions not to prosecute Chicola or genuinely feared that the State would deliberately refrain from future prosecutions of Chicola, such concerns were of no consequence to his self-defense claim. Neither consideration would have a bearing on whether the force used by Defendant upon Chicola was either reasonably *860 or apparently necessary to prevent an offense against him as required by La.R.S. 14:19. The supreme court, in State v. Ludwig, 423 So.2d 1073, 1079 (La.1982), stated:
Defendant argues that the trial court's exclusion of the evidence violated his federal and state constitutional rights to present a defense and to confront and cross-examine his accusers. These constitutional guarantees do not, however, require a trial court to permit the introduction of evidence that is irrelevant or which has so little probative value that it is substantially outweighed by other legitimate considerations in the administration of justice.
Because Defendant was not prejudiced in the presentation of his case and the evidence at issue was irrelevant to the case, this assignment of error has no merit.

RIGHT TO A FAIR TRIAL
In Defendant's fifth assignment of error, he contends that he was denied his right to a fair trial. His assertion is grounded on his argument in his first two assignments of error, and, because we have found no merit regarding his claims on the State's Motion to Quash and Motion in Limine, we conclude that this assignment of error also lacks merit.

EXCITED UTTERANCE
In his third assignment of error, Defendant argues the trial court improperly limited the testimony of his wife. He combines this assignment with his sixth assignment of error, claiming that the ruling also denied him his constitutional right against self-incrimination because it forced him to testify in his own behalf.
Mrs. McBride, while testifying for Defendant, began relating events that occurred after Defendant cut Chicola and upon his return home. She testified that he was very upset and that his horse was breathing heavily and bleeding from being spurred. She said that Defendant's glasses were missing and his shirt was so torn that it was hanging around his waist. She claimed that, upon riding up to the house, Defendant exclaimed, "I cut A. J., call the law!" When asked if Defendant told her what happened, the State objected that such a description of events would constitute inadmissible hearsay. Defendant argued that Mrs. McBride should be allowed to testify regarding Defendant's explanation of events under the "excited utterance" exception to the general rule prohibiting hearsay. The trial court sustained the objection, finding that, while Defendant's initial statements (I cut A.J., call the law!) met the excited utterance exception to the hearsay rule, the remainder of his explanation did not.
The "excited utterance" exception is defined in La.Code Evid. art. 803(2) as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." In State v. Hester, 99-426, pp. 14-15 (La.App. 5 Cir. 9/28/99); 746 So.2d 95, 105-06, writ denied sub nom, 99-3217 (La.4/20/00); 760 So.2d 342, our colleagues held:
This exception requires an event sufficiently startling to render a declarant's normal reflective thought process inoperative. Further, the statement of the declarant must have been a spontaneous reaction to the event and not the result of reflective thought. State v. Rhodes, 29,207, p. 8 (La.App. 2 Cir. 1/22/97), 688 So.2d 628, 634-635, writ denied, 98-0264 (La.6/19/98), 719 So.2d 481.
In determining whether a statement was made under the stress of the startling event, the most important factor is time. Other factors include whether the statement is self-serving or in response to an inquiry, whether the statement is expanded beyond a description of events to include past or future facts, and whether the declarant performed tasks requiring reflective thought between the event and the statement. State v. Jasper, *861 28,187, p. 8 (La.App. 2 Cir. 6/26/96), 677 So.2d 553, 563, writ denied, 97-0753 (La.9/26/97), 701 So.2d 980.
When considering this objection, the trial court removed the jury from the courtroom and allowed Mrs. McBride to testify as to what Defendant told her after he arrived at their home. According to her testimony, after Defendant told her that he cut Chicola and to call the law, Mrs. McBride said, "Oh my God, Steve, what happened?" At that point, she launched into a narration of Defendant's explanation of events leading to Chicola being cut.[5]
While it can be said that the event leading to the utterances by Defendant was startling and that the utterances were made at a time shortly after the event, the statements clearly were self-serving and in response to an inquiry. As such, we cannot say that the utterances were not the product of reflective thought, rather than spontaneous utterances. Further, Mrs. McBride's recollection of the events and time sequence surrounding Defendant's utterances was not entirely clear. A trial court's ruling regarding admissibility of evidence should not be disturbed absent an abuse of discretion. State v. Bridgewater, 98-658 (La.App. 5 Cir. 12/16/98); 726 So.2d 987. We, therefore, are unable to say the trial court abused its discretion in ruling the evidence inadmissible. Thus, Defendant's third assignment of error is without merit.
With regard to Defendant's sixth assignment of error, we have addressed a similar issue in our discussion of the State's motion to quash subpoenas citing Corley, 703 So.2d 653. That case held that constitutional guarantees do not require the admission of statutorily inadmissible evidence where a defendant's ability to put on a defense has not been impaired. Further, Corley holds that constitutional guarantees do not require the admission of evidence that is not trustworthy or lacks probative value. Id. In light of our reasoning in Corley, the trial court correctly excluded Mrs. McBride's testimony regarding Defendant's self-serving, hearsay narrative. Accordingly, Defendant's sixth assignment of error lacks merit.

MOTION FOR A MISTRIAL
In his fourth assignment of error, Defendant argues that the trial court erred by denying his oral motion for a mistrial. At trial, during its cross-examination of Defendant, the State asked him if he had been in a fight since January 1997. He replied, "As far as I know, I haven't." The State then asked him whether he had been involved in a fight on October 3, 1999. Defendant then objected and asked for a mistrial.
Before trial, Defendant filed a motion to quash and requested that the admissibility of "bad acts" evidence be determined. The trial court limited the use of such evidence to matters for which Defendant had notice. However, Defendant did not have notice that the evidence at issue would be offered to impeach him. The State claimed that it did not obtain the information until that morning and argued that Defendant "opened the door" to such questions by adducing evidence suggesting that he was too debilitated to fight.
*862 In denying the mistrial, the trial court noted that the question had not been answered and, therefore, no prejudice had occurred. Further, the trial court prevented the State from proceeding with the line of questioning, noting that the State had failed to provide Defendant with information related to the fight.
Defendant relies on La.Code Crim.P. art. 770, which states in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
. . . .
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible[.]
The State contends that Article 770 does not apply in the current situation because there was no impermissible reference to another crime. In support of its argument, the State cites State v. Frank, 93-1402 (La.App. 3 Cir. 4/6/94); 635 So.2d 634, 636 (citation omitted), regarding the application of Article 770(2): "the remark complained of must be an unambiguous reference to crimes alleged to have been committed by the defendant."
The basic statement of law is true, but Frank is not completely on point since the defendant's argument in that case was based on a statement made by the prosecutor during rebuttal argument, "And don't let this man get away with raping this woman. Come back with a guilty verdict, not only for Beverly, but for everyone else." Id. at 636. In Frank, there was no showing that the State's remark referred to other crimes committed by the defendant. The term "everyone else" was inherently ambiguous in the context of Frank, as there was nothing to connect that reference with any acts by the defendant. Thus, the case sub judice arguably presents a closer issue because the prosecutor's question referred to a specific date. On the other hand, as the trial court noted, Defendant did not answer the question and the court prohibited the State from pursuing it. Thus, no prejudice occurred.
In State v. Johnson, 94-1379 (La.11/27/95); 664 So.2d 94, 101, reconsideration denied, 94-1379 (La.4/8/96); 671 So.2d 332, the supreme court found that errors regarding "other crimes" evidence could be harmless, even in light of the mandatory language of Article 770. The test for harmless error is "whether the verdict actually rendered was surely unattributable to the error." Id. at 102, citing Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). The mechanics of the test include a Jackson-like review of the evidence adduced at trial. In Johnson, the supreme court held that the State's case against the defendant was so strong that the erroneous introduction of other crimes evidence was harmless. This decision is especially noteworthy in that the "other crimes" introduced were five prior burglary convictions that had been nolle prosequied, yet were used to impeach the defendant's credibility at trial.
We, therefore, find that any error that occurred in the case at hand would have been harmless. Defendant never answered the State's question, and the trial court prevented the State from pursuing the matter. Thus, the single question is unlikely to have influenced the jury, particularly in light of the fact that Defendant conceded he cut the victim's throat and built his case on self-defense as justification. The State wanted to show that Defendant was still able to fight and, thus, not as debilitated as he wished to present himself. However, the record reveals Defendant was able to ride a horse and help other men work cattle. Further, the evidence showed that Defendant still had sufficient dexterity to open a folding knife with one hand while on horseback and then cut another man's throat with it. In light of Johnson, 664 So.2d 94, we find that the *863 State's overall case against Defendant was strong enough such that any error committed by the State in this instance was harmless. Accordingly, this assignment of error lacks merit.

MOTION FOR NEW TRIAL
In his eighth assignment of error, Defendant argues that the trial court erred in denying his Motion for New Trial. Motions for new trial are governed by La. Code Crim.P. art. 851, which states in pertinent part:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
(1) The verdict is contrary to the law and the evidence;
(2) The court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error;
. . . .
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.
Defendant's argument for a new trial focuses in part on Article 851(2) and, as in his fifth assignment of error, depends largely upon his arguments in the first two assignments of error. Since we have found no merit in those assignments of error, the trial court did not err in its rulings. Defendant's argument fails on this point.
Another facet of Defendant's argument appears to focus on Article 851(1) and (5) and apparently relies on factual assessments made from his testimony that Chicola was the aggressor. We have already addressed Defendant's related arguments regarding sufficiency of the evidence and found no merit in them. Further, arguments under these portions of Article 851 present nothing for review on appeal. La. Code Crim.P. art. 858; State v. Snyder, 98-1078 (La.4/14/99); 750 So.2d 832, notes 21-22.; and State v. Hampton, 98-0331 (La.4/23/99); 750 So.2d 867, cert. denied, 528 U.S. 1007, 120 S.Ct. 504, 145 L.Ed.2d 390 (1999).
Finally, on a motion for new trial, the trial court reweighs the evidence as a "thirteenth juror." State v. Voorhies, 590 So.2d 776 (La.App. 3 Cir.1991). Accordingly, we are unable to say that the trial court abused its discretion in assessing the evidence as the thirteenth juror. State v. King, 96-1303 (La.App. 3 Cir. 4/2/97); 692 So.2d 1296. Therefore, this assignment of error also lacks merit.

EXCESSIVE SENTENCE
In his final assignments of error, consolidated on appeal, Defendant argues that the trial court improperly denied his Motion To Reconsider Sentence because the sentence was excessive. Defendant was sentenced to four years and ten months at hard labor, plus a $1,000 fine or sixty days in jail for failure to pay the fine. The trial court suspended four-and-a-half years of the sentence and placed Defendant on five years supervised probation. Defendant asserts that, other than his turbulent history with Chicola, he has been a law-abiding citizen, is the "breadwinner" for his family, attends church, and works in the community.
The sentencing portion of La.R.S. 14:34.1 states, "Whoever commits the crime of second degree battery shall be fined not more than two thousand dollars or imprisoned, with or without hard labor, for not more than five years, or both." Thus, Defendant received a sentence near, but within, the statutory maximum. In State v. McManus, 96-1108, pp. 3-4 (La. App. 3 Cir. 3/19/97); 692 So.2d 649, 650-51, writ denied, 97-1022 (La.10/3/97); 701 So.2d 197, we said:

*864 Article 1, § 20 of the Louisiana Constitution of 1974, prohibits "cruel, excessive, or unusual punishment." A sentence which falls within the statutory limits may nevertheless be excessive under circumstances. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Naquin, 527 So.2d 601 (La.App. 3 Cir. 1988). To constitute an excessive sentence this court must find that the penalty is so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and, therefore, is nothing more than needless imposition of pain and suffering. State v. Campbell, 404 So.2d 1205 (La.1981); State v. Everett, 530 So.2d 615 (La.App. 3 Cir. 1988), writ denied, 536 So.2d 1233 (La. 1989). The trial judge is given wide discretion in imposing a sentence, and a sentence imposed within the statutory limits will not be deemed excessive in the absence of manifest abuse of discretion. State v. Howard, 414 So.2d 1210, 1217 (La.1982).
. . . .
With regard to this last provision [La.Code Crim.P. art. 894.1], the trial court need not refer to every aggravating and mitigating circumstance in order to comply with the article. However, the record must affirmatively reflect that adequate consideration was given to the codal guidelines in particularizing the defendant's sentence. State v. Smith, 433 So.2d 688 (La.1983).
If there is an adequate factual basis for the sentence contained in the record, the trial court's failure to articulate every circumstance listed in Article 894.1 will not necessitate a remand for resentencing. State v. Cottingin, 476 So.2d 1184 (La.App. 3 Cir.1985), appeal after remand, 496 So.2d 1379 (La.App. 3 Cir. 1986); State v. Morgan, 428 So.2d 1215 (La.App. 3 Cir.1983), writ denied, 433 So.2d 166 (La.1983); See also, State v. Smith, 433 So.2d 688 (La.1983) and State v. Stein, 611 So.2d 800 (La.App. 3 Cir.1992). The sentencing court need not articulate every circumstance or read through a checklist of items to comply with the requirements of La. Code Crim.P. art. 894.1. State v. Pontiff, 604 So.2d 71, 76 (La.App. 3 Cir. 1992).
We also note State v. Cook, 95-2784, p. 2 (La.5/31/96); 674 So.2d 957, 958-59, cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996), in which the Louisiana Supreme Court reversed our decision and reinstated the defendant's sentence, stating:
A trial judge has broad sentencing discretion because he or she remains in the best position to assess the aggravating and mitigating circumstances presented by each case. State v. Smith, 93-0402, p. 7-8 (La.7/5/94), 639 So.2d 237, 242 (on reh'g) (reh'g denied).
. . . .
...The only relevant question on review, however, was "whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate." State v. Humphrey, 445 So.2d 1155, 1165 (La.1984) (citing State v. Williams, 412 So.2d 1327 (La.1982)).
While the trial court denied Defendant's motion to reconsider sentence without reasons, it gave extensive reasons at sentencing. We find that the trial court gave adequate consideration under Article 894.1. In particular, the trial court considered that a lesser sentence would have depreciated the seriousness of the crime; that Defendant committed acts of violence during the commission of the crime; that Chicola sustained a significant injury; that Defendant had committed other offenses against Chicola in which he had been found guilty; and that Defendant used a dangerous weapon in the commission of the crime. Further, the trial court considered the impact the crime had, not only on Chicola and his family, but also on Defendant's family. Finally, the trial *865 court noted that Defendant had an arson conviction in 1974. Accordingly, we find, particularly in light of Cook, that the trial court did not abuse its broad sentencing discretion and that these assignments of error have no merit.

CONCLUSION
Defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] La.Code Evid. art. 507, states in part:

A. General rule. Neither a subpoena nor a court order shall be issued to a lawyer or his representative to appear or testify in any criminal investigation or proceeding where the purpose of the subpoena or order is to ask the lawyer or his representative to reveal information about a client or former client obtained in the course of representing the client unless the court after a contradictory hearing has determined that the information sought is not protected from disclosure by any applicable privilege or work product rule; and all of the following:
(1) The information sought is essential to the successful completion of an ongoing investigation, prosecution, or defense.
(2) The purpose of seeking the information is not to harass the attorney or his client.
(3) With respect to a subpoena, the subpoena lists the information sought with particularity, is reasonably limited as to subject matter and period of time, and gives timely notice.
(4) There is no practicable alternative means of obtaining the information.
[2] La. Const. Article V, § 26(B) states:

Powers. Except as otherwise provided by this constitution, a district attorney, or his designated assistant, shall have charge of every criminal prosecution by the state in his district, be the representative of the state before the grand jury in his district, and be the legal advisor to the grand jury. He shall perform other duties provided by law.
[3] We note that La.Code Evid. art. 803(8) provides an exception to the hearsay rule for public records and reports. However, that exception does not allow for admission of the evidence in the instant case. Article 803(8) provides an exception to the hearsay rule for "[i]nvestigative reports by police and other law enforcement personnel" or "factual findings resulting from investigation of a particular complaint, case, or incident, including an investigation into the facts and circumstances on which the present proceeding is based or an investigation into a similar occurrence or occurrences." La.Code Evid. art. 803(8)(i) and (iv). Accordingly, the statements made by Defendant, whether oral, written, or nonverbal, are excepted from the exception to the hearsay rule as they were statements either made during an investigation into an alleged crime by the assistant district attorney acting as law enforcement personnel or are factual findings resulting from an investigation of a particular complaint.
[4] This event occurred before the men became neighbors.
[5] He said that he was untieing [sic] the gate at Bobby Roberts' house and that he heard something coming down the road. He figured it was A.J., but he didn't know for positive because he did not look. He said and all of a sudden I heard a "cruh" right beside my horse and I look up and A.J. jumped out of the van and grabbed my horse. He said the van kept going down the road. He said it, it went on down the road and went into the ditch and stopped when it hit a fence post and he said he started hitting me upside of my head and knocked my glasses off. And said, um, when I get you off thismany ugly words that I'm not repeatingI'm going to kill you. And he told me that A.J. looked very upset, you know, like he was excited or something like, but he said that he had not seen him or nothing before that. Said his van was in the carport, but, I mean he didn't tell me all this right then, or maybe he did, I don't remember for positive.