496 So.2d 596 (1986)
STATE of Louisiana
v.
Willard YOCHIM, III.
STATE of Louisiana
v.
Willard YOCHIM.
Nos. 86 KA 0421, 86 KA 0422.
Court of Appeal of Louisiana, First Circuit.
October 15, 1986.
*597 Bryan Bush, Dist. Atty., Office of the Dist. Atty., Baton Rouge, by Don Wall, Asst. Dist. Atty. for plaintiff-appellee.
Jack Dampf, Baton Rouge, for defendant-appellant.
Before EDWARDS, WATKINS and JOHN S. COVINGTON, JJ.
WATKINS, Judge.
Defendant, Willard D. Yochim, III, appeals his convictions of aggravated rape and aggravated crime against nature. The sole issue before us is whether the trial judge erred in permitting a sheriff's detective to repeat certain statements made to him by the victim on the afternoon she was abducted and raped. Because these statements fall within the recognized exception to the hearsay rule for excited utterances as the early complaint of a rape victim, we affirm.

STATEMENT OF FACTS
At approximately 2:15 p.m. on June 27, 1985, a man, later identified as the defendant, knocked on the door of the victim's home in East Baton Rouge Parish and asked if her husband was home. The victim, a young married woman, said no, and the defendant then told her he was having trouble with his truck and asked for her help. At his request, the victim got into the cab of the defendant's blue pickup truck while he held the battery cable. When the truck started, the defendant closed the hood, walked to the driver's door, and drew a knife. After a struggle, he forced the victim to the floor of the truck and drove away with her. He threatened to kill her if she didn't settle down. He told her that he would go to prison for life if he was caught and had nothing to lose by killing her. They drove approximately nineteen miles to a remote pipeline crossing. Shortly after 3:00 p.m., the defendant, while holding the knife below her ribs, led the victim into the woods. There, he forced her to submit to oral and anal intercourse. The victim was so frightened that she had a bowel movement during the rape. After cleaning and dressing themselves, they returned to the pickup. The victim promised not to tell anyone what had happened and to make up an explanation for her disappearance. With these assurances, the defendant drove the victim approximately thirteen miles to a highway shoulder six miles from her home, where he left her. Before driving away, he told her that he would "be back."
At approximately 3:45 p.m., the victim was picked up on the highway shoulder by a passing motorist, Camille Macaluso. She had walked and run, barefoot, less than a quarter of a mile. Macaluso testified that the victim started "hollering and screaming that she had been raped" and that she was afraid to get into his car. She was very emotionally upset. The victim told Macaluso only that she had been raped by a white man, that he had a blue pickup truck, and that she had persuaded the man to release her. Macaluso then drove the victim toward her mother-in-law's home. During the drive the victim was alternately calm and hysterical.
After driving for less than ten minutes, Macaluso was stopped by off-duty state policeman Wayne Borders, an acquaintance of the victim who had been searching for her. Borders stated that the victim was terribly upset and that she started crying. She told him only that she had been raped, and wanted to be taken home. Borders then drove the victim the short distance to her mother-in-law's house. He carried her to a bedroom where she began to cry again.
The first person to learn the details of the abduction and rape was Sgt. Freddie Fletcher of the East Baton Rouge Sheriff's Department. Fletcher arrived at the house at approximately 4:00 p.m. He stated that the victim was "very, very hysterical" and would not talk to him for fifteen minutes.
*598 The victim stated she was afraid to talk because the defendant would kill her. Fletcher asked questions to the victim which were repeated by her mother-in-law. Sgt. Fletcher's testimony indicates that he heard the victim's responses, and that the questioning lasted from approximately 4:15 p.m. until 4:30 p.m. The victim was then taken back to the rape scene and, eventually, to a hospital. The physician who examined her at the hospital indicated the victim was still extremely emotionally upset.
The defendant was arrested six days later, on July 2, 1985, and charged with aggravated rape, in violation of LSA-R.S. 14:42, and aggravated crime against nature, in violation of LSA-R.S. 14:89.1. Trial by jury was held in December, 1985. After the victim testified, Sgt. Fletcher related, over objection, certain statements made by her at the initial interview on the day of the rape. These statements described the defendant's height, weight, appearance, tattoos, pickup truck, and the details of the truck's interior. The defendant was later found guilty of both offenses. He was sentenced concurrently, at hard labor and without benefit of parole, probation, or suspension of sentence, to life imprisonment for aggravated rape, and thirteen years imprisonment for aggravated crime against nature.

STATEMENT OF LAW
The victim's out-of-court unsworn statements to Sgt. Fletcher on June 27, 1985, were offered at trial for the truth of the matters asserted, and were clearly hearsay. State v. Martin, 356 So.2d 1370 (La.1978). Hearsay statements are inadmissible except as provided by statute or by the traditional common law hearsay exceptions. State v. Henderson, 362 So.2d 1358 (La.1978); State v. Smith, 285 So.2d 240 (La.1973); LSA-R.S. 15:434, 463.
By statute, Louisiana recognizes the res gestae exception to the hearsay rule. LSA-R.S. 15:447, 448.[1] Though it is often referred to as res gestae, the courts of Louisiana recognize the common law hearsay exception for statements made under the influence of a startling event, that is, for excited utterances. State v. Brown, 395 So.2d 1301 (La.1981); State v. Henderson, supra. The excited utterance exception derives,[2] but is distinct, from the res gestae exception and has its own bases for admissibility. State v. Johnson, 461 So.2d 1273 (La.App. 1st Cir.1984). See State v. Brown, supra.
Louisiana also recognizes, in prosecutions for sex offenses, a special form of the excited utterance (res gestae) exception. See State v. Pace, 301 So.2d 323 (La.1974); C. McCormick, Evidence § 297 *599 (3d ed. 1984); 6 J. Wigmore, Evidence §§ 1760-1761 (Chadbourn rev. 1976); Comment, Excited Utterances and Present Sense Impressions as Exceptions to the Hearsay Rule in Louisiana, 29 La.L.Rev. 661, 675 (1969). The original complaint of a young child is admissible when the particular facts and circumstances of the case indicate that the complaint was the product of a shocking episode and not fabrication. State v. Prestridge, 399 So.2d 564 (La.1981); State v. Adams, 394 So.2d 1204 (La.1981); State v. Brown, 302 So.2d 290 (La.1974). This rule is not relevant to the present case. There is also an "exception" to the hearsay rule for the early complaints of rape victims. When there is no unexplained lapse of time between the rape and the victim's complaint, and when the utterance is spontaneous, the person to whom the complaint was made is allowed to repeat the complaint in court. State v. Middlebrook, 409 So.2d 588 (La.1982); State v. Hatcher, 372 So.2d 1024 (La.1979); State v. Elzie, 351 So.2d 1174 (La.1977).
The rationale for the excited utterance exception is that the excited condition caused by a shocking event suspends the process of reflective thought necessary for conscious fabrication, and the recentness of the event minimizes the danger of faulty memory.[3] G. Lilly, Evidence § 61 (1978). See State v. Hunter, 340 So.2d 226 (La.1976); State v. Smith, 285 So.2d 240 (La.1973). See also, C. McCormick, supra, § 297; 6 J. Wigmore, supra, §§ 1747-1748.
Because of the special reliability regarded as furnished by the declarant's excitement, a statement within the exception may be admitted whether or not the declarant is shown to be unavailable. C. McCormick, supra, § 297. See, e.g., State v. Adams, supra (admitting original complaint of five-year-old child who did not testify at trial); State v. Monta, 470 So.2d 383 (La. App. 3d Cir.), writ denied, 476 So.2d 348 (La.1985) (admitting original complaint of three-year-old child who did not testify at trial).
There are two basic requirements for the excited utterance (res gestae) exception. "There must be an occurrence or event sufficiently startling to render normal reflective thought processes of an observer inoperative. Additionally, the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought." State v. Henderson, 362 So.2d 1358, 1362 (citations omitted, emphasis added). See C. McCormick, supra, § 297.
In the present case, there can be no doubt that the first requirement has been met. The abduction and rape of this victim was an event sufficiently startling to invoke the exception. The victim was forcibly taken from her home at knife point, held captive for more than an hour, and abandoned on a public highway six miles from her home. During this time, her life was threatened, and she was orally and anally raped.
The principal issue before us is whether the second requirement has been met, that is, whether the victim's statements to Sgt. Fletcher were a spontaneous reaction to the abduction and rape and not the result of reflective thought. Spontaneity must be determined from the particular facts and circumstances of each case. State v. Pace, 301 So.2d 323 (La.1974); State v. Reese, 250 La. 151, 194 So.2d 729, cert. denied, 389 U.S. 996, 88 S.Ct. 485, 19 L.Ed.2d 495 (1967); 6 J. Wigmore, supra, § 1750. Initially, it must also be shown that the declarant was affected by the exciting event. C. McCormick, supra, § 297. This has been clearly shown. The fact that a statement is made in response to an *600 inquiry does not automatically defeat these exceptions to the hearsay rule. See State v. Brown, 395 So.2d 1301 (La.1981) (excited utterance); State v. Elzie, 351 So.2d 1174 (La.1977) (early complaint of rape victim). Nor does the fact that a statement is made to more than one person necessarily preclude its admission under the exceptions. State v. Krolowitz, 407 So.2d 1175 (La.1981) (excited utterance); State v. Middlebrook, 409 So.2d 588 (La.1982) (early complaint of rape victim); State v. Hoyt, 464 So.2d 841 (La.App. 5th Cir.1985) (early complaint of rape victim).
Many factors enter into the determination of spontaneity. The Supreme Court in Henderson noted: "Probably the most important of these is the time factor. In this connection the trial court must determine whether the interval between the event and the statement was long enough to permit a subsidence of emotional upset and a restoration of a reflective thought process." State v. Henderson, 362 So.2d at 1362. A rape complaint must be made without any unexplained lapse of time between the offense and the complaint. See State v. Middlebrook, 409 So.2d 588 (La.1982); State v. Elzie, 352 So.2d 1174 (La.1977); C. McCormick, supra, § 297. The time factor is applied less stringently to rape complaints than to the typical excited utterance. See C. McCormick, supra, § 297.
Henderson discussed several additional factors which may indicate that a statement was the result of reflective thought, but which do not automatically justify exclusion. These factors include:
Evidence that the statement was self serving or made in response to an inquiry; Expansion of the excited utterance beyond a description of the exciting event into past facts or the future; Proof that the declarant performed tasks requiring reflective thought processes between the event and the statement. See, State v. Smith, 285 So.2d 240 (La.1973); C. McCormick, Evidence, § 297 at 705, et seq. (2d ed. 1972); G. Pugh, Louisiana Evidence Law, at 515 (1974), at 208 (Supp.1976); Comment, Excited Utterances and Present Sense Impressions as Exceptions to the Hearsay Rule in Louisiana, 29 La.L.Rev. 661 (1969).
Henderson, 362 So.2d at 1362.
Because of the wide variety of possible factual situations, trial courts should have wide discretion in determining whether a declarant was, at the time of the offered statement, still under the influence of the exciting event. C. McCormick, supra, § 297. See State v. Reese, supra, 194 So.2d at 734.
Applying the Henderson factors to the present case, we conclude that the victim's emotional upset had not subsided, and her reflective thought processes had not been restored, when she made her statements to Sgt. Fletcher. They were therefore admissible in evidence. The abduction, threats, and forced oral and anal intercourse were clearly traumatic, and spanned a period of more than one hour. Although the time cannot be stated with certainty, it appears the victim made these statements within fifteen minutes after reaching the relative safety of her mother-in-law's house, within forty-five minutes to an hour after her release onto a highway shoulder, and within approximately ninety minutes of being orally and anally raped. There was no unexplained lapse of time from her release until she made the statements. There is no indication that the statements were self-serving. In fact, the victim had never seen the defendant before he abducted her. Although the victim's answers were heard by Sgt. Fletcher, who was investigating the rape at the time, the actual questions to the victim were asked by her mother-in-law. The victim's statements were brief, and described only the defendant and his truck. They did not go beyond a description of her abduction and rape. There is no indication the victim performed tasks requiring reflective thought after she was released onto the highway. Although she spoke briefly with Camille Macaluso, she was too upset to tell him more than the fact that she was abducted in a blue pickup truck, raped by a white man, and that she *601 had persuaded her abductor to release her. She told Wayne Borders only that she had been raped and wanted to be taken home.
Macaluso, who saw her on the highway shoulder within minutes after the defendant had driven away, described the victim as very emotionally upset, and at times hysterical. Borders, who saw her within ten minutes after she was picked up by Macaluso, described her as terribly upset and crying. Sgt. Fletcher saw the victim within a half an hour of her release. He stated that she was "very, very hysterical" before she spoke to him. The victim's examining physician's testimony indicated that she continued to be extremely emotionally upset even after speaking to Sgt. Fletcher.
Given the special facts and circumstances of this case, we cannot say that the trial judge abused his great discretion in admitting the statements under the excited utterance exception as the early complaint of a rape victim. See also, State v. Adams, 394 So.2d 1204 (La.1981) (statement of five-year-old victim approximately eight to ten hours after rape admitted as original complaint of young child/res gestae); State v. Brown, 302 So.2d 290 (La.1974) (statement of sixteen-year-old victim within one hour of rape admissible as original complaint of rape victim); State v. Hoyt, 464 So.2d 841 (La.App. 5th Cir.1985) (statement made by adult rape victim approximately an hour after rape admitted as early complaint of a rape victim and "possibly" as part of the res gestae). Accordingly, the convictions and sentences of William D. Yochim, III, are affirmed.
AFFIRMED.
NOTES
[1] LSA-R.S. 15:447 provides:

Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence.
LSA-R.S. 15:448 provides:
To constitute res gestae the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction.
This doctrine "includes not only spontaneous utterances and declarations made before and after commission of a crime but also includes testimony of witnesses and police officers pertaining to what they heard or observed before, during or after the commission of the crime if the continuous chain of events is evident under the circumstances." State v. Drew, 360 So.2d 500 (La.1978), cert. denied, 439 U.S. 1059, 99 S.Ct. 820, 59 L.Ed.2d 25 (1979).
[2] The term res gestae came into common usage in the early 1800s. 6 J. Wigmore, Evidence § 1767 (Chadbourn rev. 1976). At this time the theory of hearsay was not well developed, and the exceptions to the hearsay rule were not clearly defined. C. McCormick, Evidence § 288 (3d ed. 1984). Res gestae was a convenient vehicle for escape from the hearsay rule in two situations. Id. First, it explained the admissibility of statements that were not hearsay at all, either because non-assertive, or not offered for their truth. Id., §§ 288-289. Second, it justified the admission of statements within the four hearsay exceptions now known as: (1) statements of present bodily conditions; (2) statements of present mental states and emotions, (3) excited utterances, and (4) present sense impressions. Id., § 288.
[3] It appears that the "original complaint of a young child" and "early complaint of a rape victim" exceptions are based on the same rationale as the excited utterance (res gestae) exception: the excited condition caused by the shocking event reduces the risk of fabrication. See C. McCormick, supra, § 297; 6 J. Wigmore, supra, §§ 1760, 1761; Comment, 29 La.L.Rev. at 675. See also State v. Gordon, 463 So.2d 665 (La.App. 4th Cir.1985) (rationale of "original complaint of a young child" exception in sex offenses is applicable to admit original statements, under res gestae exception, of a young child who witnessed a murder.)