STATE OF LOUISIANA
v.
AQUENDIUS D. LANDRY
No. 2008 KA 1589.
Court of Appeals of Louisiana, First Circuit.
February 13, 2009.
NOT DESIGNATED FOR PUBLICATION
Anthony G. Falterman, District Attorney, Thomas Daigle, Assistant District Attorney, Napoleonville, Louisiana, Attorneys for State Appellee.
Donald D. Candell, Assistant District Attorney, Gonzales, Louisiana, Bruce G. Whittaker, New Orleans, Louisiana, Attorney for Defendant/Appellant Aquendius D. Landry.
Before: PETTIGREW, McDONALD, HUGHES, JJ.
McDONALD, J.
The defendant, Aquendius D. Landry, was charged by bill of information with attempted second degree murder, a violation of La. R.S. 14:30.1 and 14:27. He pled not guilty and, following a jury trial, the defendant was found guilty as charged. He was sentenced to fifty (50) years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The defendant now appeals, designating three assignments of error. We affirm the conviction and sentence.

FACTS
Late in the evening on September 27, 2006, the defendant, who had recently gotten out of jail, called Anya Ewell, his girlfriend, at her trailer on Pleasant Lane in Assumption Parish. The defendant was the father of Anya's two children. The defendant stayed with Anya on occasion, but lived with his grandfather, Walter Robinson, on La. Hwy. 1 in Labadieville. The defendant wanted to visit Anya, but she told him he could not come over. Anya had a protective order against the defendant. About twenty minutes after the phone call, the defendant arrived at Anya's trailer. He asked Anya to come outside to speak to him. When she went outside, the defendant brought her to his vehicle, a Ford Taurus. She and the defendant got in the back seat. Lormatina Landry, the defendant's brother, was driving.
Following the defendant's instructions on where to go, Lormatina drove to Hard Time Road in Napoleonville, a predetermined area. During the drive, the defendant told Anya he was going to "show [her] by playing with him." The defendant thought Anya was seeing someone else and, apparently, was going to exact retribution for her infidelity. Hard Time Road is a remote gravel and dirt road, and the nearest house was about two-and-a-half miles away.
The defendant and Lormatina exited the vehicle, and the defendant pulled Anya from the vehicle. The defendant held Anya on the ground and told Lormatina to hand him the gas. Lormatina handed the defendant a red gasoline can. The defendant poured gasoline on the upper body of Anya and, with a lighter, lit her on fire. Anya rolled around on the ground until the fire extinguished. The defendant poured gasoline on Anya again, and set her on fire again. Anya began rolling on the ground again. She rolled to the opposite side of the road into a ditch, which had shallow water in it. Again, the fire extinguished. After searching, the defendant found Anya in the ditch. He picked her up, placed her in his vehicle, and drove her to his grandfather's house. Mr. Robinson then took Anya to Assumption Community Hospital.
Anya's injuries were severe and life-threatening. She suffered second and third degree burns to her upper body. Several hours after being intubated, treated, and stabilized at Assumption Community Hospital, she was airlifted to the Baton Rouge General Burn Center. Dr. Ernest J. Mencer, a general surgeon who treated Anya at the burn center, testified at trial that his initial impression was that Anya had flame and chemical burns to fifty percent of her total body surface.[1] Anya underwent extensive medical care, including skin-grafting surgeries to her face, back, and neck. She also underwent skin grafting on her right foot, which was burned so deep that tendons were exposed.

ASSIGNMENT OF ERROR NO. 1
In his first assignment of error, the defendant argues the trial court erred in permitting Anya's treating nurse to testify as to what Anya told her about the incident. Specifically, the defendant contends the nurse's testimony was inadmissible hearsay and, as such, his conviction should be reversed.
Yvette Boudreaux was the emergency room registered nurse who treated Anya when she entered Assumption Community Hospital. At trial, the State offered into evidence the medical records, which contained Nurse Boudreaux's treatment of Anya, and included statements made by Anya to Nurse Boudreaux about how she got burned. Defense counsel objected to the medical records being introduced because they contained hearsay. The trial court overruled the objection, and the medical records were submitted into evidence. Later at trial on direct examination, Nurse Boudreaux, who had been provided the medical records to refresh her memory, testified that when she first saw Anya, she asked her what had happened. Anya responded that he burned her. Defense counsel reurged his objection to hearsay. The trial court overruled the objection, finding the response to be an excited utterance. The State then asked if Anya voiced anything else. Nurse Boudreaux, reading directly from the medical records, gave the following response:
She voices that my boyfriend took me in the cane field and lit me on fire. And she then said that his brother drove the car and did everything that he told him to do. He took her back of the cane fields in Napoleonville. We stopped on that cross road. He threw me out of the car and told his brother to get the gasoline. He poured all the gas on me and then he told his brother to get the lighter. He lit me on fire. I fell on the ground and put the fire out. He got mad and screamed, I'm going to do it again. He lit me on fire again and then I took off running and jumped in the ditch to try to put it out again. He jumped in the ditch and pulled me out and threw me in the car and took me to his grandfather's house. The elderly gentleman who brought her in was, she stated, his grandfather.
The defendant contends that Anya's statements to Nurse Boudreaux did not fall under the excited utterance exception to hearsay. The defendant states in his brief Anya's "lengthy and detailed recounting of events in narrative form" did not qualify as an excited utterance because significant time had passed since the event, the narrative was in response to an inquiry, and the narrative was a description of past events.
Louisiana Code of Evidence article 803(2) provides that a statement relating to a startling event or condition is not excluded by the hearsay rule if it was made while the declarant was under the stress of excitement caused by the event. There are two basic requirements for the excited utterance exception. There must be an occurrence or event sufficiently startling to render normal reflective thought processes of an observer inoperative. Additionally, the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought. There are many factors that enter into determining whether in fact the second requirement has been fulfilled and whether a declarant was at the time of an offered statement under the influence of an exciting event. Probably the most important of these is the time factor. In this connection the trial court must determine whether the interval between the event and the statement was long enough to permit a subsidence of emotional upset and a restoration of a reflective thought process. State v. Hilton, 99-1239, p. 11 (La. App. 1st Cir. 3/31/00), 764 So.2d 1027, 1034-35, writ denied, XXXX-XXXX (La. 3/9/01), 786 So.2d 113.
We note initially that, despite the defendant's assertion to the contrary, the fact that Anya's statement was made in response to an inquiry does not automatically defeat the excited utterance exception to the hearsay rule. See State v. Brown, 395 So.2d 1301, 1308 (La. 1981). We further note that a significant amount of time had not passed between the moment Anya was burned and the moment she told the nurse she had been burned. According to Nurse Boudreaux's testimony, the start time of the initial triage on Anya was at 1:00 a.m. Anya testified that when the defendant called and came by her house on the night of the incident, it was dark. Amy Bradford was at Anya's house when the defendant came over on the night of the incident. Ms. Bradford testified that Anya went outside to speak to the defendant. The next time Ms. Bradford saw Anya was at Assumption Community Hospital an hour later, where Anya was undergoing treatment for severe burns.
Nurse Boudreaux testified that Anya was triaged as critical, which is the highest acuity level. When Nurse Boudreaux initially treated Anya, Anya rated her pain as ten out of ten and stated, "I'm burning, please help me." Dr. Rome Sherrod, the emergency room physician who treated Anya at Assumption Community Hospital, testified at trial that when Anya entered the doors, he could tell she had been burned. She was "very stoic" but he could tell "she was in a lot of stress and basically in shock at that particular time when she came in." Dr. Sherrod took several pictures of Anya, which were submitted into evidence, and reiterated, "She was in a state of shock at that particular time."
In Brown, 395 So.2d at 1307-08, the victim had been brought to the hospital by one of her assailants, and some three to four hours had elapsed since the victim had been shot. In the emergency room, the victim's treating nurse asked her what happened to her. The victim stated that Randy beat her and Randy's brother, Robert [defendant], shot her. In finding the victim's statement admissible as an excited utterance, the supreme court stated:
[T]here was an appreciable lapse of time, but the victim testified she had been beaten and shot, and upon her arrival at the hospital she was still disoriented, had been unconscious, and was obviously suffering from the trauma of the attack. Given her apparent mental and physical condition, especially the fact that, until told by hospital personnel, she did not know she had a bullet wound to the forehead, we find the time lapse was not long enough for her emotional state to diminish, or long enough to allow her to reflect on the events of the battery. Though the statement was in response to an inquiry from Ms. Taylor, the question was merely part of the patient's examination and not leading and is thus admissible as an excited utterance.
Id. at 1308.
Similarly, we find that Nurse Boudreaux's testimony, describing Anya's statements to her about what happened, fall under the excited utterance exception to the hearsay rule. As in Brown, Anya was presented for treatment after being severely burned, obviously suffering from the trauma of the attack, and in shock. See State v. Yochim, 496 So.2d 596, 599-601 (La. App. 1st Cir. 1986). Furthermore, while in Brown, three to four hours had passed from the time the victim was shot until the time she spoke to the nurse, only about an hour had passed from the time Anya was burned until the time she spoke to the nurse.[2]
Even assuming, arguendo, that Nurse Boudreaux's statements constituted hearsay, given the overwhelming evidence of the defendant's guilt, such statements by Nurse Boudreaux were cumulative and corroborative of other testimony and evidence establishing the defendant's guilt. Evidence of the defendant's guilt includes the following. Amy Bradford was at Anya's house the night the defendant picked up Anya. The next time Ms. Bradford saw Anya was an hour later at the hospital, where she was suffering from severe burns. Lieutenant Darren Crochet, with the Assumption Parish Sheriffs Office, testified at trial that several days after the incident, he found, pursuant to a search warrant, two pairs of pants with belts underneath the outside cement steps of the defendant's grandfather's house. The pants and belts were submitted to the Crime Lab, where analysis revealed the presence of gasoline in the items. Sergeant Brandon Rivere, with the Assumption Parish Sheriffs Office, secured the defendant's Ford Taurus, which was at Lormatina's house. Sergeant Rivere then went to the defendant's grandfather's house, where he found Lormatina. Sergeant Rivere detained Lormatina in his police unit. Lormatina then voluntarily directed Sergeant Rivere to the crime scene at Hard Time Road. Sergeant Rivere found a red gas can and a dark colored shirt on the side of the road. Lieutenant Louis Lambert, with the Assumption Parish Sheriffs Office, testified that when he initially approached the defendant's Taurus at Lormatina's house, some of the vehicle's windows were down. Lieutenant Lambert smelled a strong odor of gasoline and burnt flesh. Anya testified at trial that the defendant, after telling her that he was going to "show [her]," poured gasoline on her and lit her on fire. After she managed to put the fire out, the defendant poured gasoline on her again, and lit her on fire again. The defendant then placed her in his vehicle and drove them to his grandfather's house. Walter Robinson testified that on that same evening, the defendant and Anya came to his house. Anya asked him to bring her to the hospital, which he did. Mr. Robinson further testified that, after he brought Anya to the hospital, he went to Napoleonville to pick up the defendant's mother. They went back to Mr. Robinson's house, and the defendant arrived at his house a short time later. The defendant spoke to his mother, but not to Mr. Robinson. Mr. Robinson then brought the defendant to jail in Napoleonville, where he was taken into custody. Therefore, even if erroneous, the admission of Nurse Boudreaux's statements into evidence was harmless beyond a reasonable doubt. See La. C.Cr.P. art. 921; State v. Byrd, 540 So.2d 1110, 1114 (La. App. 1st Cir.), writ denied, 546 So.2d 169 (La. 1989). See also Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).
At trial, regarding the medical records and Nurse Boudreaux's testimony about what Anya told her, defense counsel lodged his objections based on hearsay. On appeal, however, the defendant argues that Nurse Boudreaux's testimony was hearsay, and also states "this hearsay evidence . . . unduly deprived appellant of his right of confrontation." The defendant then cites Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). No contemporaneous objection was made at trial regarding a Crawford or confrontation issue. An irregularity or error cannot be complained of after the verdict unless it was objected to at the time of the occurrence. Accordingly, this argument is not properly preserved for appellate review. La. C.E. art. 103(A)(1); La. C.Cr.P. art. 841(A). See State v. Young, 99-1264, p. 9 (La. App. 1st Cir. 3/31/00), 764 So.2d 998, 1005.
Even assuming defense counsel's trial objection was broad enough to encompass a Crawford claim, we would find no Confrontation Clause violation. Both Nurse Boudreaux and Anya testified at trial and were therefore available for cross-examination. When the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of her prior testimonial statements. See Crawford, 541 U.S. at 59, n.9, 124 S.Ct. at 1369, n.9. Accordingly, under Crawford, since Anya testified at trial and was subject to and in fact underwent cross-examination, there was no Confrontation Clause violation, and, as such, the defendant's right to confrontation was not violated.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
In his second assignment of error, the defendant argues the evidence was insufficient to support the conviction for attempted second degree murder. Specifically, the defendant contends he did not have the specific intent to kill Anya. The defendant does not deny he doused Anya with gasoline and set her on fire. He argues only that he intended to injure, rather than kill, Anya.
The proper procedural vehicle for raising the sufficiency of the evidence is by first filing a motion for post-verdict judgment of acquittal before the trial court. La. C.Cr.P. art. 821. Nevertheless, despite the defendant's failure to file such a motion, we will consider a claim of insufficiency of the evidence which has been briefed pursuant to a formal assignment of error. See State v. Williams, 613 So.2d 252, 255 (La. App. 1st Cir. 1992).
A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const, amend. XIV; La. Const, art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also La. C.Cr.P. art. 821(B); State v. Ordodi, XXXX-XXXX, p. 10 (La. 11/29/06), 946 So.2d 654, 660; State v. Mussall, 523 So.2d 1305, 1308-09 (La. 1988). The Jackson v. Virginia standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the fact finder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. See State v. Patorno, 2001-2585, pp. 4-5 (La. App. 1st Cir. 6/21/02), 822 So.2d 141, 144.
Louisiana Revised Statutes 14:30.1 provides, in pertinent part:
A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm[.]
To sustain a conviction for attempted second degree murder, the State must prove that the defendant intended to kill the victim and that he committed an overt act tending toward the accomplishment of the victim's death, and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose. See La. R.S 14:27(A); 14:30.1. Although the statute for the completed crime of second degree murder allows for a conviction based on "specific intent to kill or to inflict great bodily harm," attempted second degree murder requires specific intent to kill. State v. Bishop, 2001-2548, p. 4 (La. 1/14/03), 835 So.2d 434, 437.
Specific intent is that state of mind that exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Such state of mind can be formed in an instant State v. Cousan, 94-2503, p. 13 (La. 11/25/96), 684 So.2d 382, 390. Specific intent need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126, 1127 (La. 1982).
The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a fact finder's determination of guilt. State v. Taylor, 97-2261, pp. 5-6 (La. App. 1st Cir. 9/25/98), 721 So.2d 929, 932.
In the case at hand, the testimony elicited at trial revealed that Anya was severely burned, suffering second and third-degree burns to her head, shoulders, face, scalp, and foot. Her injuries were life-threatening, and if she had not been intubated shortly after arriving at the hospital, she would have died from asphyxiation. For about two weeks Anya remained intubated. After about one-and-a-half months of hospitalization, including two skin-grafting surgeries, Anya was released from the burn unit to the rehabilitation unit. The defendant did not testify, and no witnesses for the defendant testified.
The guilty verdict indicates the jury concluded that the defendant, in twice pouring gasoline on Anya and twice setting her on fire, intended to kill her. The defense theory that the defendant intended only to injure Anya was apparently rejected by the jury. To the extent circumstantial evidence was involved in this matter, when a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. See State v. Moten, 510 So.2d 55, 61 (La. App. 1st Cir.), writ denied, 514 So.2d 126 (La. 1987).
The defendant states in his brief that his actions and words showed he wanted Anya to survive. The defendant's pulling Anya out of the ditch and driving her to his grandfather's house do not diminish the intent the defendant had when he twice set Anya on fire. The law is clear that specific intent to commit murder can be formed in an instant and "premeditation" is not an element of the crime. See State v. Legrand, XXXX-XXXX, p. 17 (La. 12/3/03), 864 So.2d 89, 101, cert. denied, 544 U.S. 947, 125 S.Ct. 1692, 161 L.Ed.2d 523 (2005). The defendant did nothing to help Anya after he set her on fire the first time. He did not attempt to extinguish the fire or call for help. Moreover, instead of providing first aid or assistance to Anya after initially burning her, the defendant chose to douse her a second time with gasoline and, again, set her on fire. If the defendant's intent was to merely injure Anya, it would seem he would have accomplished this after setting her on fire the first time. In any event, the fire was extinguished both times only because of Anya's presence of mind to roll around on the ground or into a ditch with shallow water. There is little doubt that, but for Anya's self-help during each instance of being set on fire, she would have burned to death.
After a thorough review of the record, we find that the evidence supports the jury's unanimous verdict. We are convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of attempted second degree murder.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 3
The defendant asks that this court examine the record for patent error under La. C.Cr.P. art. 920(2). This court routinely reviews the record for such errors, whether or not such a request is made by a defendant. Under Article 920(2), we are limited in our review to errors discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence. After a careful review of the record in these proceedings, we have found no reversible errors. See State v. Price, 2005-2514 (La. App. 1st Cir. 12/28/06), 952 So.2d 112 (en banc), writ denied, XXXX-XXXX (La. 2/22/08), 976 So.2d 1277.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Dr. Mencer testified that Anya had second-degree burns, but that, clinically, there is no significant difference in a deep second-degree burn and a third-degree burn since both burns require skin grafting.
[2] We also find, as did the Brown court, that Anya's statements to the nurse were admissible as part of the res gestae. Res gestae is defined as events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants. This doctrine includes not only spontaneous utterances and declarations made before and after commission of a crime, but also includes testimony of witnesses pertaining to what they heard or observed before, during or after the commission of the crime if the continuous chain of events is evident under the circumstances. The statement made by Anya in the emergency room to Nurse Boudreaux was part of a continuous chain of events that began when Anya was first burned. See La. C.E. art. 801(D)(4); Brown, 395 So.2d at 1307. See also State v. Price, 517 So.2d 858, 862 (La. App. 3d Cir. 1987), writ denied, 548 So.2d 316 (La. 1989).