STATE OF LOUISIANA
v.
KYLE J. HARRY
No. 2008 KA 2483.
Court of Appeals of Louisiana, First Circuit.
June 12, 2009.
Not Designated for Publication
WALTER P. REED, District Attorney KATHRYN LANDRY, Special Appeals Counsel, Counsel for Appellee State of Louisiana.
CALVIN JOHNSON, Counsel for Defendant/Appellant, Kyle J. Harry.
Before: KUHN, GUIDRY, and GAIDRY, JJ.
GAIDRY, J.
The defendant, Kyle Jamar Harry, was charged by grand jury indictment with second degree murder, a violation of La. R.S. 14:30.1. He pled not guilty. At the conclusion of a trial, the defendant was convicted as charged. The defendant moved for a new trial and for post-verdict judgment of acquittal. The trial court denied both motions. The defendant subsequently was sentenced to imprisonment at hard labor for life without benefit of probation, parole, or suspension of sentence. He now appeals, urging the following assignments of error:
1. The trial court allowed the admission of other crimes evidence without the proper foundation.
2. The trial court gave an erroneous instruction as to reasonable doubt.
3. The defense was denied the right to go forward with the defense when the trial court did not allow the cross-examination of an officer and a lay witness who both had knowledge of a crime committed by another perpetrator with the same caliber weapon as the murder weapon used in the instant case.
4. A massive accumulation of hearsay, double hearsay, and at times triple hearsay, was allowed over the defense objection.
Finding no merit in the defendant's assignments of error, we affirm the conviction and sentence.

FACTS
On June 22, 2005, the Bogalusa Police Department was dispatched to an apartment at the O'Neal Apartment Complex on Magee Street in connection with a shooting. Inside the bathroom of the apartment, the lifeless body of the victim, Anthony "G-Slim" Brown, was found wedged between the toilet and the wall. He had multiple gunshot wounds all over his body. A homicide investigation began.
In connection with the investigation, the police spoke with two neighbors, Anna Turner and Donald Ray Sampson. Sampson stated that as he was cutting the grass at his home across the street from the O'Neal Apartments, he observed a white man and a black man approach the victim's apartment. The white man kicked in the door and both men entered the apartment. Shortly thereafter, Sampson heard two or three gunshots. The men fled from the apartment and left the scene in a white pickup truck. Sampson walked toward the apartment to see what had transpired. A different black male, subsequently identified as Chris Miller, ran out of the victim's apartment and asked Sampson to call the police.
Anna Turner told the police that she had been inside her apartment when she heard the gunshots. She looked out of the window and saw a white male and a black male exiting the victim's apartment. Turner watched as both men left the area in a white truck. Turner initially identified the white male as an individual named "Jeremy Meyn." However, it was later determined that Jeremy Meyn was actually incarcerated in Washington Parish Jail on the date of the shooting.
Upon realizing that Jeremy Meyn and Blake Barnes (a white male) possessed similar physical characteristics, the investigating officers decided to question Barnes. Barnes admitted to being present at the victim's apartment on the day in question. He told the police that he had gone there earlier that day with Byron Johnson. Barnes claimed he was robbed of $10.00 during the visit. He also told the police that Johnson shot the victim. In response to this information, Johnson was questioned by the authorities. Johnson admitted that he went to the victim's apartment with Barnes. He stated that he, the victim, and Damion Dyson set Barnes up to be robbed of a pound of marijuana, not $10.00. Johnson denied shooting the victim. Johnson was later arrested and charged with armed robbery. When questioned again, Barnes changed his story. He admitted that he was robbed of drugs, not money, and that Johnson did not shoot the victim. Frightened, Barnes indicated that he could not reveal the identity of the actual shooter.
Several months later, Barnes was questioned again. This time, Barnes, in the presence of his attorney, named the defendant (a black male) as the shooter. Barnes explained that, when he initially went to the victim's house with Byron Johnson, he was robbed of some marijuana he received from the defendant. Barnes claimed he told the defendant about the robbery and explained that he suspected that the victim and Johnson were involved. Barnes and the defendant returned to the victim's apartment. The defendant instructed Barnes to kick in the door. Barnes complied and he and the defendant entered the apartment. The defendant asked the victim, "where is my f'n dope?" According to Barnes, the victim told the defendant he would go and get the drugs, but the defendant shot him before he could do so. Barnes ran from the residence, returned to the truck and waited there for the defendant. Barnes claimed he initially implicated Johnson as the shooter because he feared for his life and the lives of his family.
Chris Miller told the police that he was inside the apartment with the victim when the men arrived. According to Miller, he jumped into the closet after the door was kicked in. From the closet, Miller observed the black male and white male enter the apartment. He stated that the black male did the shooting.
The evidence presented at trial established that the defendant owned a white pickup truck.

ASSIGNMENT OF ERROR 1
In his first assignment of error, the defendant claims the trial court erred in allowing the state to introduce evidence of other crimes, wrongs, or bad acts by the defendant. Specifically, he argues that the state was allowed to introduce evidence of drug dealing by the defendant through testimony from Kristen Taylor and Barnes. He also points out that the state initially sought to introduce the testimony of Stewart Daquire indicating that the defendant also "fronted" him marijuana to sell, and notes that the state never introduced such testimony.
The record reflects that prior to trial, the state filed notice of its intent to introduce evidence of other acts as an integral part of the crime and/or evidence of other crimes. In the pleading, the state indicated that it intended to introduce, through the testimony of Barnes, evidence of the drug deal that led to the victim's murder. Barnes had already provided a statement indicating that the defendant "fronted" him the pound of marijuana he intended to sell to the victim and Johnson. After he was robbed of the marijuana, Barnes reported the matter to the defendant, the supplier. The defendant and Barnes returned to the O'Neal Apartments to avenge the robbery. The defendant shot the victim before he could produce the marijuana taken from Barnes.
The state noted that the evidence of the aforementioned drug deal formed an integral part of the crime and was relevant to prove motive, opportunity, intent, preparation, plan, knowledge, identity, and/or absence of mistake or accident under La. C.E. arts. 801(D)(4) and 404(B). The state also indicated it intended to introduce evidence to show that the defendant supplied drugs to others during the time of the instant offense and in the same manner as described by Barnes. Daquire would testify that the defendant supplied large amounts of marijuana (on credit) for him to sell. This evidence, the state asserted, was relevant to show the defendant's intent, motive, lack of mistake, plan and/or knowledge of the murder. At the conclusion of a hearing, the trial court ruled that the testimony from Barnes regarding the drug deal that went bad was relevant to establish the motive and intent of the defendant to go and shoot the victim. Daquire's testimony was also relevant to show motive and intent. The state's evidence would be allowed at the trial.
At the trial, the state questioned Barnes about the facts and circumstances surrounding the drug deal. Barnes's girlfriend, Kristen Taylor, provided corroborating testimony regarding Barnes's actions on the day of the shooting. Although Daquire did testify, the state did not question him regarding any drug fronting and/or selling by or for the defendant.
Article 404(B)(1) of the Louisiana Code of Evidence provides the basic rule regarding the use of evidence of "other crimes, wrongs, or acts" at trial. It states, in pertinent part:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
The Louisiana Supreme Court has long approved of the introduction of other crimes evidence, "when it is related and intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to it[,]" State v. Brewington, 601 So.2d 656, 657 (La. 1992) (per curiam), or "to complete the story of the crime on trial by proving its immediate context of happenings near in time and place." State v. Haarala, 398 So.2d 1093, 1097 (La. 1981). "The test of integral act evidence is therefore not simply whether the state might somehow structure its case to avoid any mention of the uncharged act or conduct but whether doing so would deprive its case of narrative momentum and cohesiveness, `with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict.'" State v. Colomb, 98-2813, p. 4 (La. 10/1/99), 747 So.2d 1074, 1076 (per curiam) (citing Old Chief v. United States, 519 U.S. 172, 187, 117 S.Ct. 644, 653, 136 L.Ed.2d 574 (1997)).
In the case at bar, it is reasonable to conclude that the testimony concerning the drug deal that led to the victim's murder was part of the res gestae. Barnes testified that he and the defendant went to the O'Neal Apartments to recover the marijuana that was stolen from Barnes by the victim, Johnson and others. Thus, the testimony indicating that the defendant supplied the marijuana to Barnes on credit, a short while before the murder, provided narrative completeness of the circumstances surrounding the commission of the offense and formed an integral part of the facts to be considered by the jurors. Furthermore, the evidence of the drug deal between the defendant and Barnes was also relevant to prove, at the least, motive and intent under article 404(B). This testimony could not reasonably have been excluded.
While the defendant argues that the state erroneously elicited testimony regarding other crimes by the defendant from Barnes and Taylor, he appears to take issue with the fact that the state did not question Daquire about any prior drug dealings with the defendant. The defendant argues that a favorable pretrial ruling regarding the admissibility of Daquire's testimony, which he claims the state never intended to introduce, opened the door for the evidence of the drug deal on the day in question. As previously noted, the testimony regarding the drug deal that provided the basis for the retaliatory shooting in this case was independently relevant and admissible. The court's ruling on the admissibility of Daquire's testimony had absolutely no bearing on the admissibility of evidence of the drug deal that led to the shooting. Moreover, simply because the state sought a pretrial ruling on the admissibility of Daquire's testimony does not mean that the state was then obligated to introduce such evidence.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR 2
In his second assignment of error, the defendant contends the trial court erred in providing an erroneous instruction to the jury during voir dire. Specifically, he points to the trial court's instruction indicating that, "if the state proves each and every element of the offense to your satisfaction beyond a reasonable doubt, you have to return a verdict of guilty." The defendant argues that, because the judge's instruction mandates the return of a guilty verdict, it is a misstatement of the law and constitutes reversible error. The state responds that the defense failed to object to the instruction and, therefore, is precluded from challenging the instruction on appeal.
The state is correct in its assertion that the record is devoid of an objection to the instruction in at issue. Louisiana Code of Criminal Procedure Article 801(C) provides that "[a] party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error." Furthermore, La. C.Cr.P. art. 841(A) provides that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." Because the defendant's counsel failed to make a contemporaneous objection to the jury instruction in question, the issue raised in this assignment of error is not properly preserved for appellate review. See State v. Dilosa, XXXX-XXXX, p. 17 (La. App. 1st Cir. 5/9/03), 849 So.2d 657, 671, writ denied, XXXX-XXXX (La. 12/12/03), 860 So.2d 1153. This assignment of error lacks merit.

ASSIGNMENT OF ERROR 3
In his third assignment of error, the defendant argues that the trial court erroneously deprived him of his right to present a defense. Specifically, he asserts the trial court should not have curtailed the crossexamination of Officer Wendell O'Berry regarding a gun taken from Damion Dyson in connection with an unrelated offense that occurred after the alleged robbery and murder in this case. The state responds that the evidence is "wholly irrelevant" and was properly excluded.
A defendant in a criminal case is constitutionally guaranteed the right to present a defense. However, constitutional guarantees do not assure the defendant the right to the admissibility of any type of evidence. State v. Hill, 610 So.2d 1080, 1086 (La. App. 3rd Cir. 1992). While the rules of evidence are often invoked to regulate admission of testimony, in rare cases, "where [an] evidentiary rule impermissibly impairs the defendant's right to present a defense, the evidence still should be admitted." Hill, 610 So.2d at 1086. The Louisiana Supreme Court in State v. Ludwig, 423 So.2d 1073, 1079 (La. 1982), held that constitutional guarantees do not require the trial court to permit the introduction of evidence that is irrelevant or which has so little probative value that it is substantially outweighed by other legitimate considerations in the administration of justice.
The record reflects that during the cross-examination of Officer Wendell O'Berry, counsel for the defendant asked if there had been an incident where a gun was taken from Damion Dyson since the time of the instant offense. O'Berry responded affirmatively and indicated that the police "may have recovered one Friday." The state objected and a brief sidebar was held. The state noted that Dyson was recently picked up in connection with an unrelated murder. In response to the court's inquiry regarding the relevance of the testimony regarding Dyson's arrest, the defense indicated that the police recovered a 380 semi-automatic from Dyson. Counsel indicated that the defense would like to have the gun tested to see if it matched the shell casings found at the scene of the murder in this case. The prosecutor objected to the untimely request for testing of the weapon by the defense. The court ruled, "[w]e are not going to try that case. We are going to try this case." The court explained that any testimony regarding Dyson's arrest was "far afield and irrelevant to the proceedings in this matter."
It is well settled that the defendant is deprived of his defense and a fair.trial where the court erroneously excludes defense witness testimony that would have substantially helped the defense. See State v. Shoemaker, 500 So.2d 385, 389 (La. 1987). Where the excluded testimony is crucial to the defense theory, a conclusion of reversible error would be well founded. See State v. Caldwell, 504 So.2d 853, 856 (La. 1987).
In the instant case, we find that the inclusion of the testimony that the defense attempted to elicit from the state's witness would not have necessitated the acceptance of the hypothesis of innocence proposed by the defendant, i.e., that he was not the shooter. Considering the evidence in the record, we find beyond a reasonable doubt that the excluded evidence could not have affected the jury's verdict. The exclusion of this evidence, even if error, was harmless beyond a reasonable doubt. See Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993). Furthermore, from the record, it appears that counsel for the defendant was far more concerned with having the gun tested than with introducing testimony regarding the weapon and Dyson's arrest. We find, as the state correctly notes, any request for ballistics testing made during the trial of the matter was clearly untimely and unreasonable. The trial court did not err in denying this request. This assignment of error lacks merit.

ASSIGNMENT OF ERROR 4
In his fourth and final assignment of error, the defendant argues that the trial was replete with hearsay evidence presented by police officers and lay witnesses. Specifically, he points to the testimony of Barnes, Taylor, and Miller.
Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, when the statement is being offered as an assertion to show the truth of matters asserted therein and thus rests for its value upon the credibility of the out-of-court asserter. State v. Butler, 93-1317, p. 6 (La. App. 1st Cir. 10/7/94), 646 So.2d 925, 929, writ denied, 95-0420 (La. 6/16/95), 655 So.2d 340 (citing State v. Martin, 356 So.2d 1370, 1373-74 (La. 1978); La. C.E. art. 801(C)). Hearsay is not admissible except as otherwise provided by the Code of Evidence or other legislation. La. C.E. art. 802. One of the primary justifications for the exclusion of hearsay is that the adversary has no opportunity to cross-examine the absent declarant to test the accuracy and completeness of the testimony. The declarant also is not under oath at the time of the statement. Moreover, the confrontation clause of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right... to be confronted with the witnesses against him." U.S. Const, amend. VI. There is no opportunity for confrontation when an assertion by one party is presented through the testimony of another party. State v. Wille, 559 So.2d 1321, 1329 (La. 1990), cert. denied, 506 U.S. 880, 113 S.Ct. 231, 121 L.Ed.2d 167 (1992).
In his argument in support of this assignment of error and in the "Statement of the Case" section of his brief, the defendant complains of numerous instances of alleged inadmissible hearsay at his trial. He notes that Johnson did not testify at the trial, yet his statements regarding the incident were admitted through the testimony of the police officers. He complains that Officer Bullen was allowed to testify regarding statements made by Daquire. Paris Smith testified regarding information relayed to him by Donald Sampson, Anna Turner, and Rico Roberts. Captain Joe Culpepper's testimony included statements made by Barnes. Turner testified about things stated to her by Miller. Taylor's testimony included hearsay statements from Barnes. Finally, O'Berry testified regarding statements made by Barnes and Miller.
The state argues that the defendant is precluded from raising a claim regarding the admission of hearsay testimony in all but one instance, because he failed to contemporaneously object at trial. Our review of the record and the testimonial excerpts cited by the defendant reveals that the defendant is correct in his assertion that the trial of this matter is replete with hearsay testimony. However, the state is also correct in that the defendant failed to object to much of the hearsay evidence. The defendant urged a hearsay objection once during the testimony of Barnes and once during the testimony of Turner. In all of the remaining instances, there were no hearsay objections and the defendant raises these claims for the first time on appeal.
Under La. C.Cr.P. art. 841 and La. C.E. art. 103(A)(1), a contemporaneous objection is required to preserve an error for appellate review. The purpose of the contemporaneous objection rule is to allow the trial judge the opportunity to rule on the objection and thereby prevent or cure an error. State v. Herrod, 412 So.2d 564, 566 (La. 1982). The rule also prevents defense counsel from "sitting on" an error and gambling unsuccessfully on the verdict, and later basing an appeal on an error that might have been corrected at trial. State v. Duplissey, 550 So.2d 590, 593 (La. 1989). Since the defendant failed to lodge a contemporaneous objection to most of the contested testimony, he is precluded from raising the issue for the first time on appeal. As such, we will consider only the objections made by the defendant and ruled on by the trial court.
During the testimony of Barnes, a hearsay objection was lodged by the defense in response to Barnes's statement regarding what he heard happened to the murder weapon. This objection was sustained by the trial court before Barnes ever indicated what he heard. Because the defendant received a favorable ruling on this issue, there is nothing for review on appeal. Next, the defense objected when Turner testified that immediately after the shooting, Miller came to her apartment and told her what he witnessed. Over the defense objection, the trial court allowed Turner to recount what Miller told her.
Hearsay is inadmissible unless it falls within an exception. See La. C.E. art. 802. Louisiana Code of Evidence article 803(2) provides that a statement relating to a startling event or condition is not excluded by the hearsay rule if it was made while the declarant was under the stress of excitement caused by the event or condition. Because of the special reliability regarded as furnished by the declarant's excitement, a statement within the exception may be admitted whether or not the declarant is shown to be unavailable. State v. Yochim, 496 So.2d 596, 599 (La. App. 1st Cir. 1986). There is no violation of the Confrontation Clause when properly admitted excited utterances are introduced for the truth of the matter asserted. See State v. Robinson, 2000-2284 (La. 1/12/01), 776 So.2d 431, 432 (per curiam) (introduction of victim's properly admitted excited utterance does not violate the Confrontation Clause even when it constitutes the only direct evidence that the defendant committed the offense, citing State v. Henderson, 362 So.2d 1358, 1361-62 (La. 1978)).
There are two basic requirements for the excited utterance exception. There must be an occurrence or event sufficiently startling to render normal reflective thought processes of an observer inoperative. Additionally, the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought. State v. Hilton, 99-1239, p. 11 (La. App. 1st Cir. 3/31/00), 764 So.2d 1027, 1034, writ denied, XXXX-XXXX (La. 3/9/01), 786 So.2d 113. There are many factors that enter into determining whether in fact the second requirement has been fulfilled and whether a declarant was at the time of an offered statement under the influence of an exciting event. Probably the most important of these is the time factor. The trial court must determine whether the interval between the event and the statement was long enough to permit a subsidence of emotional upset and a restoration of a reflective thought process. State v. Hilton, 99-1239 at p. 11, 764 So.2d at 1034-35. The trial court has wide discretion in determining whether the declarant was, at the time of the statement, still under the influence of the exciting event. State v. Yochim, 496 So.2d at 600.
In the instant case, Miller's statements to Turner were made immediately after he witnessed the fatal shooting. The shooting unquestionably was an event sufficiently startling to render the normal reflective thought processes of an observer inoperative. Clearly, the statements made by Miller to Turner were made while Miller was still under the stress or excitement of that event and not from reflection and fabrication. Accordingly, we find that Turner's testimony regarding Miller's statement was admissible as an excited utterance exception to the hearsay rule. Moreover, Miller testified at the trial; thus, the information provided in Turner's testimony was cumulative of the information provided by Miller.
In his brief, the defendant attempts to explain the lack of contemporaneous objections to the hearsay evidence by claiming that objecting would have been in vain because the trial judge "made it perfectly clear how he would handle objections made by the [cjounsel for the defendant and how he would handle objections made by the state." The defendant cites an excerpt from the trial transcript and implies that the trial judge was biased and that he specifically indicated that he would sustain all state objections. He claims the bias by the trial court is what prevented defense counsel from making any further objections to the hearsay evidence introduced at the trial.
Our review of the record reveals, and the state correctly notes in its brief, that the defendant mischaracterizes the trial court's statement. First, the exchange cited by the defendant occurred on the final day of the trial (after much of the hearsay evidence had already been introduced). Secondly, the exchange had absolutely nothing to do with hearsay. The record reflects that during the defense examination of Sergeant Kendall Bullen, the state objected to defense counsel questioning Sgt. Bullen about information contained in the autopsy report. The exchange was as follows:
DEFENSE COUNSEL: In the course of your investigation, did you in fact read that autopsy protocol?
BULLEN: I might have looked through it, but I don't remember a lot about it.
DEFENSE COUNSEL: I'm going to ask you to take a look at it.
PROSECUTOR: I would lodge an objection. May we approach?
[Bench conference]
PROSECUTOR: I'm objecting at this point, I've allowed some, but I'm going to start objecting to Mr. Lopez trying to get expert information from a regular Detective about pathologist questions every other question. I object to him going in and asking him about the pathologist report. He is not an expert, he is not a doctor.
THE COURT: He's not qualified to answer the question.
DEFENSE COUNSEL: Your Honor, first of all, I didn't ask him any questions about the report other than has he seen it. And my question is specifically about any conclusions contained in the report.
PROSECUTOR: I don't want to hear any questions about the bullet directions or opinions.
THE COURT: I will sustain all your objections, don't worry.
We further note that, in his efforts to support his mischaracterization of the aforementioned exchange, the defendant's brief conveniently omits the portions of the exchange that reveal its true context. It is clear from the record that the exchange in question did not reveal any bias by the trial court and certainly had no bearing on the defense counsel's willingness to object to hearsay.
This assignment of error lacks merit.

DECREE
For the foregoing reasons, we affirm the defendant's conviction and sentence.
CONVICTION AND SENTENCE AFFIRMED.
GUDRY, J., dissenting.
I respectfully dissent from the majority's opinion, affirming the defendant's conviction and sentence. Particularly, I disagree with the majority's determination that it finds beyond a reasonable doubt that the excluded testimony of Officer O'Berry regarding Damion Dyson's recent arrest for murder and confiscation of a weapon similar to that which was used in the instant case could not have affected the jury's verdict.
At trial, the jury was presented with the testimony of two questionable eyewitnesses, Blake Barnes and Chris Miller. Additionally, one of the independent eyewitnesses, Donald Sampson, indicated that he did not get a good look at the black male fleeing from the victim's apartment. Another eyewitness, Anna Turner, identified the defendant from a police line-up, but in her grand jury testimony, she indicated that she thought the person that she saw on the day of the murder was darker skinned than the defendant.
Faced with this evidence, the testimony as to Dyson's subsequent arrest for murder and confiscation by the police of a gun similar to that which was used in the murder in the instant case could have affected the jury's verdict, particularly since the record indicates that on the morning of the victim's murder, Dyson participated in the armed robbery of Barnes at the victim's apartment, using a gun to threaten and later "pistol whip" Barnes. As such, I disagree with the majority's determination that it finds beyond a reasonable doubt, the excluded evidence could not have affected the jury's verdict, and that such exclusion was harmless.